CORONADO TRANSMISSION
COMPANY, Appellant,

v.

Jack O'SHEA, Appellee.

No. 13-85-093-CV.

Court of Appeals of Texas,
Corpus Christi.

Nov. 27, 1985.

Rehearing Denied Jan. 16, 1986.

Charles R. Porter, Porter, Rogers, Dahlman & Gordon, Corpus Christi, for appellant.

Norman Thomas, Corpus Christi, for appellee.

Before NYE, C.J., and BENAVIDES and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

A jury found that Coronado Transmission Company defrauded Jack O'Shea and awarded him $411,538.36 in actual damages and the same in exemplary damages.[1] The trial court entered judgment for O'Shea and reformed a disputed contract between the parties in accordance with the jury's findings.

Appellant now contends in 21 points of error that there was either no evidence or insufficient evidence to support a finding of fraud; and that the trial court improperly admitted parol evidence, erred in submitting issues to the jury and erred in reforming the disputed contract. We affirm.

In 1976, Winfred Lott, Jack O'Shea, and Louis Fritz as president of Coronado Transmission Company, combined their talents and set out to build a natural gas pipeline in the Black Warrior Basin of Alabama. In their initial negotiations, they discussed forming a partnership divided equally among the three. After months of preparation and negotiation, the parties entered into a pre-incorporation agreement whereby they agreed to form the Alatex Pipeline Corporation to construct the pipeline. This agreement was entered into on August 4, 1976, and called for Alatex to be incorporated within 120 days.

Under this agreement, Lott and O'Shea were described as Coronado's agents whose percentage of Alatex stock would be determined by their success in obtaining financing for the corporation to be formed. If the agents were able to obtain *debt* financing for the entire project they were to receive 50% of the Alatex stock.[2] If the agents were able to obtain *equity* financing, they were to receive 40% and Coronado was to receive 60% of the stock not belong-

---

1. The subject matter of this suit was first before this Court in an appeal from the summary judgment. We reversed and remanded the case for trial. *O'Shea v. Coronado Transmission Compa-*

*ny,* 656 S.W.2d 557 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.).

2. It is undisputed that O'Shea and Lott agreed to split their interest equally.

ing to the equity financiers. If the agents were unable to obtain either debt or equity financing, they were to receive 10% of the Alatex stock. The agreement also provided that the agents had the option of exchanging this 10% stock ownership to a 10% net revenue interest after payout of the pipeline system. The agreement gave the agents 30 days from August 4, 1976, to obtain financing.

The undisputed evidence shows that Alatex Pipeline Corporation was never formed. Instead, on November 23, 1976 (less than 120 days from the date of the Pre-incorporation Agreement), Coronado Transmission Company entered into a limited partnership agreement with three limited partners who had been uninvolved in the project before. Coronado Transmission Company became the general partner. Coronado's percentage share of the limited partnership was 45/70.

In March 1977, Winfred Lott and Jack O'Shea signed a net revenue interest agreement (NRIA) with Coronado. The agreement stated, in pertinent part:

## I.

### TERMINATION OF PRIOR AGREEMENT

Agents, by their option, have elected to receive a Net Revenue Interest as contemplated by Section V, of that certain Pre-Incorporation Agreement dated August 4, 1976, by and between Coronado and Agents. The parties further agree, that by exercise of this option, said Pre-Incorporation Agreement is hereby totally terminated effective with the date first herein-above written. The parties hereto likewise agree that said Pre-Incorporation Agreement is inoperative in its entirety, and of no further force and effect.

## II.

### NET REVENUE INTEREST

Coronado does hereby convey and assign to each Agent, severally and individ-ually, an undivided interest equal to five percent (5%) of the net revenues derived by Coronado from its sales of natural gas to Alabama Gas Corporation, as more particularly described, and subject to the terms and conditions contained herein. This agreement is effective as of the date first hereinabove written.

Net revenue is defined herein as gross revenues less an operations and management fee as set forth in Article IX contained herein, purchase gas costs and third party transportation, gathering, treating and/or compression expenses, but excluding the deduction of Federal Income Tax expenses.

In 1979, when O'Shea received his first check from Coronado (after payout of the line), he noticed that he had received 5% of Coronado's 45/70 share rather than 5% of the total pipeline revenue. At that point, O'Shea contacted Coronado and requested payment of 5% of the total pipeline revenue. Coronado refused and this suit resulted.

At trial, the disputed issues concerned whether Lott and O'Shea had obtained financing for Alatex and whether Lott and O'Shea had known about the formation of the limited partnership between Coronado and others.

O'Shea testified that he attempted to obtain financing through several outfits and that he had arranged financing for the pipeline project through James Rose with Eppler, Guerrin, and Turner in Dallas but that Louis Fritz would not sign the necessary paperwork with Rose.

O'Shea further testified that the pipeline was built despite Fritz' failure to follow through on the financing he had obtained with Eppler, Guerrin, and Turner because Fritz had arranged other financing. O'Shea said he did not inquire into the financing arrangement because he was assured by Fritz that he had his 5% of the project.

Winfred Lott testified that he and O'Shea had the financing arranged but that Fritz would not go to Dallas to sign the

agreement. Lott also testified that when he signed the NRIA in March 1977 he *was told* by Fritz and William Anderson [3] that he would get 5% of 100%.

Both Lott and O'Shea testified that they were not told about the existence of the limited partnership and believed that the 5% mentioned in the NRIA meant 5% of the total pipeline proceeds.

■ Appellant argues in point of error one that, since the terms of the NRIA are unambiguous, the trial court erred in admitting parol evidence to show fraud. Appellant objected to all of the evidence relating to the terms and existence of the pre-incorporation agreement and the evidence relating to O'Shea's and Lott's understanding of the NRIA. Appellant cites a number of cases, most involving suits on promissory notes, to conclude that parol evidence is inadmissible to contravene the express terms of a contract and to show fraud in the inducement. Appellant misreads these cases. Those cases *do not* prohibit parol evidence. Instead, those cases set forth under what circumstances parol evidence may be admitted to contravene the terms of an unambiguous contract. *Town North National Bank v. Broaddus*, 569 S.W.2d 489 (Tex.1978); Pan American Bank of *Brownsville v. Nowland*, 650 S.W.2d 879 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.).

As we stated in *Neuhaus v. Kain*, 557 S.W.2d 125 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.), parol evidence is admissible to show fraudulent inducement. *Broaddus* simply holds that the maker of a promissory note cannot show fraud in the inducement merely by claiming that a misrepresentation was made. Under *Broaddus* a person claiming fraud must show something more than mere misrepresentation to support an exception to the parol evidence rule. The rule announced in *Broaddus* has been construed narrowly to apply to cases involving negotiable promissory notes. *Wheeler v. Box*, 671 S.W.2d 75 (Tex.App.—Dallas 1984, no writ). The present case does not involve a negotiable

promissory note, nor do the facts show only that a mere misrepresentation was made.

The evidence shows that Fritz failed to disclose the existence of the limited partnership; misrepresented the percentage that Lott and O'Shea would receive under the NRIA; refused to go forward with the financing obtained by Lott and O'Shea; and entered into the limited partnership within 120 days of the preincorporation agreement. We hold that the jury was justified in finding fraudulent motives from the above factors.

Thus, even if *Broaddus* applied to this case, O'Shea showed more than mere misrepresentation. The trial court properly admitted parol evidence. Appellant's first point of error is overruled.

■ In its second point of error appellant contends the evidence is either legally or factually insufficient. Appellant appears to concede, however, that, if parol evidence is considered, the parol evidence supports the jury's finding of fraud. Having found the parol evidence admissible, we find the evidence sufficient to support the verdict. Appellant's second point of error is overruled.

Appellant's third point of error is not briefed and is accordingly overruled. *Hatch v. Davis*, 621 S.W.2d 443 (Tex.Civ. App.—Corpus Christi 1981, writ ref'd n.r. e.).

■ In appellant's fourth point of error, it alleges the trial court erred in submitting the issue of fraud broadly. The trial court submitted the issue on fraud as follows:

### SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that prior to the execution of the Net Revenue Interest Agreement Louis Fritz acting for Coronado Transmission Company fraudulently misrepresented to Jack O'Shea that he would be

---

**3.** Fritz and Anderson were the sole owners of    Coronado Transmission Company.

entitled to receive 5% of the net revenue interest of the entire pipeline project?

### INSTRUCTION

You are instructed that in order to find a fraudulent misrepresentation, you must find (1) that a material representation was made; and (2) it was false; and (3) when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; and (4) he made it with the intention that it should be acted upon by the other party; and (5) the other party (O'Shea) acted in reliance on it; and (6) he (O'Shea) thereby suffered injury.

You are further instructed that one who having made a representation which when made was true or believed to be true remains silent after he has learned that it is untrue and that the person to whom it is made is relying upon it in a transaction with him is morally and legally in the same position as if he knew that his statement was false when made. Non-disclosure is also fraudulent when the facts are intentionally not revealed for the purpose of inducing action by another.

Tex.R.Civ.P. 277 provides that it shall be discretionary with the trial court whether to submit separate questions with respect to each element of a case or to submit the issues broadly. *Shasteen v. Mid-Continent Refrigerator Co.*, 517 S.W.2d 437 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r. e.). No error is present. Appellant's fourth point of error is overruled.

■ In points of error five, six and seven, appellant contends the trial court erred in submitting jury issue number 2, which asked if Coronado Transmission Company, by way of trickery, artifice, device, or concealment, induced Jack O'Shea to execute the NRIA. Appellant contends that there were no pleadings or evidence to support submission of the issue and that the issue should have restricted the jury's consideration to a certain time period when the alleged act of trickery, artifice, device or

concealment occurred. We find contrary to appellant's contention. The pleadings and evidence do support submission of the issue. Appellant makes no argument under point of error six regarding a time restriction. Points five, six and seven are overruled.

Points of error 8 through 15, and 21, concern the trial court's reformation of the contract and the pleadings and issues which support the reformation. O'Shea plead for reformation of the contract.

■ Where there has been a mistake of one party, accompanied by fraud or other inequitable conduct of the remaining party, the instrument may be made to conform to the agreement or transaction entered into, according to the intention of the parties. *Conn v. Hagen*, 55 S.W. 323 (Tex. 1900); *Cambridge Companies, Inc. v. Williams*, 602 S.W.2d 306 (Tex.Civ.App.—Texarkana 1980), *aff'd.* 615 S.W.2d 172 (Tex. 1981). Jury issues three and four asked the jury to determine if O'Shea mistakenly believed that he was entitled to receive 5% of the entire pipeline project under the NRIA and whether Coronado Transmission had knowledge of O'Shea's mistake. These issues pertain to reformation. *Cambridge Companies, Inc. v. Williams*, 602 S.W.2d 306, at 308. The trial court did not err in submitting these issues and the jury's affirmative answer to each issue is supported by the evidence. Points of error, 8, 9, 10, 11, 14, 15, and 21 are all overruled.

■ In point of error 12, appellant alleges jury issue number 4 should have been "limited in point of time as to Coronado's knowledge of O'Shea's alleged mistake." As appellant points out, Coronado obviously had knowledge of O'Shea's interpretation of the NRIA since O'Shea informed Coronado of his interpretation, and appellant objected to the charge at trial noting that O'Shea was then alleging mistake and Coronado then knew that O'Shea was making those allegations. By reviewing special issues 3 and 4 in context rather than a vacuum, we do not find that the trial court committed reversible error. The issues in-

quire about O'Shea's *mistake* in believing the NRIA entitled him to 5% of the entire pipeline project. Obviously, Coronado learned of appellant's claim to 5% of the pipeline revenues when O'Shea so informed Coronado in a letter dated May 1, 1979. That was undisputed. The issue disputed during the trial was whether Coronado knew of O'Shea's interpretation of the NRIA before or at the time O'Shea signed it. Although issues 3 and 4 do not explicitly restrict the jury's consideration to what Coronado knew at this time, when read in the context of the entire case, the issues obviously refer to O'Shea's belief and Coronado's knowledge before or at the time the NRIA was signed. Point of error 12 is overruled.

 In its thirteenth point, appellant contends the trial court improperly commented on the weight of the evidence in issue 4 because the issue pre-supposes the existence of a mistake. We point out that special issue 4 was tied to special issue 3. The jury was instructed to answer special issue 4 only if they found in issue 3 that O'Shea had made a mistake. As such, there is no error and appellant's thirteenth point is overruled.

In points of error 16 and 17, appellant complains that the damage issue was not supported by the pleadings and that the phrase "measure of damages" should have read "amount or sum of damages." We find no merit in appellant's assertions.

O'Shea plead that each percentage point of his pipeline interest was worth "a *minimum* of $100,000.00," not "$100,000.00." Thus the amount of damages awarded did not exceed the amount plead as appellant argues. Appellant's sixteenth point of error is overruled.

We also find no error in the trial court's phrase "measure of damages," nor does appellant complain how use of this term could have harmed it. Appellant's seventeenth point of error is overruled.

In its eighteenth point of error appellant contends that the trial court failed to give Coronado credit for the amount of money previously paid to O'Shea. We disagree. A review of the record supports the trial court's award. Appellant's eighteenth point of error is likewise overruled.

■ In points 19 and 20, appellant alleges that the exemplary damages issue was neither supported by pleadings nor proof. Our review of the record shows that O'Shea's pleadings contain a demand for exemplary damages. Appellant also alleges that exemplary damages may not be awarded in this case as it involves a contract without the additional proof of a tort. We disagree. Exemplary damages may be awarded in a fraud case, and this is a fraud case. *Hobbs Trailers v. Arnett,* 560 S.W.2d 85 (Tex.1977). The evidence supports the damages awarded by the jury. Appellant's points of error 19 and 20 are overruled.

The judgment of the trial court is AFFIRMED.