Charles J. SCHINDLER, II, Appellant,

v.

AUSTWELL FARMERS
COOPERATIVE,
Appellee.

No. 13–91–085–CV.

Court of Appeals of Texas,
Corpus Christi.

March 5, 1992.

Opinion on Motion for Rehearing
April 2, 1992.

Second Rehearing Overruled May 7, 1992.

Edmond J. Ford, Jr., Corpus Christi, for appellant.

James H. Robichaux, Matthews & Branscomb, Corpus Christi, for appellee.

Before NYE, C.J., and FEDERICO G. HINOJOSA, Jr., and DORSEY, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

Charles J. Schindler, II, appeals from a judgment entered in favor of Austwell Farmers Cooperative for actual damages arising from breach of contract and fraudulent misrepresentation in the amount of $65,722.11, exemplary damages in the amount of $10,000.00, and attorney's fees. Appellant raises 16 points of error, complaining that the evidence did not establish fraud, that the trial court should have required appellee to elect between remedies, and that the trial court erred in overruling appellant's motion for continuance. We disagree and affirm the judgment of the trial court.

Appellant is a cotton and grain farmer who, on March 10, 1987, executed an account agreement with appellee, a supplier of agricultural products. Between May 1989 and August 1989, appellant purchased over $193,000.00 worth of products from appellee on credit. Appellant made three payments to appellee, the last one on July 6, 1989, and returned many products for credit to his account. Appellant's account included purchases made by his father, Charles Schindler, I, and his cousin, Rodney Johnson. The balance of appellant's account is a debt of $65,722.11.

On May 8, 1989, appellant brought his account current, paying with three separate checks, drawn on three separate checking accounts. The checking accounts were in the names of "Charles J. Schindler II Farms," "Futuro Farms, Inc." and "Rodney Johnson Farms." Futuro Farms, Inc. is a corporation wholly owned by appellant, that was incorporated in 1986, had its charter forfeited on January 18, 1988, and had it reinstated on January 18, 1990. Neither Futuro Farms nor Rodney Johnson Farms had accounts with Austwell, and the three checks went to pay the entire amount that appellant owed Austwell on his personal account. Appellant contended that on May 8, 1989, immediately after he brought his account current, he told Austwell's manager that his account had to be separated from the accounts of his father, his cousin, and his corporation, and that from then on, all goods had to be charged to the actual purchaser. Appellee contended that no such discussion had occurred, that appellant had merely represented that he was paying according to his personal bookkeeping system, and that appellant had never disputed or rescinded his father's and cousin's authority to make purchases on his behalf.

During the summer of 1989, appellant, his father and his cousin procured over $193,000.00 worth of goods on appellant's account. Appellant made three payments on his account, using the three-check system, and returned large amounts of the purchased goods for credit. On August 4, 1989, appellant requested from appellee that certain defoliants be charged to his account. Appellee allowed the purchase despite an outstanding balance of $90,-000.00 on appellant's account, because appellant acknowledged the debt and assured appellee that it would be paid in full. Appellant offered no evidence to dispute this transaction. This purchase, together with subsequent purchases, totalled $40,698.53.

Appellant and appellee next discussed the outstanding balance in late September or early October, 1989, at which time appellee released a large amount of grain appellant stored at the Co-op. Appellee contends that the grain release was induced by appellant's promise to pay his debt in full. Appellant contends that appellee had no right to withhold the grain, that the grain did not belong to him at the time it was

released, and that appellee suffered no injury by releasing the grain, other than a possible offset against the sued-for account.

After appellee unsuccessfully attempted to collect the debt on appellant's account, it filed this lawsuit. Appellee pleaded loss on a sworn account, and upon appellant's denial of the account, appellee pleaded breach of contract, fraudulent misrepresentation, and conspiracy to defraud. The jury found that appellant had executed the account agreement, that he had knowingly and fraudulently obtained the goods that were charged to his account, and that he owed $65,722.11 on the account.

■ By his fifth point of error, appellant complains that the trial court erroneously entered judgment based on fraud when the appellee suffered injury only under the contract.

■ As a general rule, failure to perform the terms of a contract yields contract liability, not tort liability. *See International Printing Pressmen & Assistants' Union v. Smith*, 145 Tex. 399, 198 S.W.2d 729, 735–36 (1946). However, a contract to perform in the future is actionable fraud when it is made with the intention, design and purpose of deceiving, and with no intention of performing. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex.1986). A party's failure to perform the contract, standing alone, is no evidence of that party's intent not to perform at the time the contract was made. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 596 (1992); *Spoljaric*, 708 S.W.2d at 435. Failure to perform is a circumstance to be considered with other facts to establish intent to defraud. Since intent to defraud is not susceptible to direct proof, it invariably must be proven by circumstantial evidence. "Slight circumstantial evidence" of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent. *Spoljaric*, 708 S.W.2d at 435.

Austwell pleaded and the jury found that appellant had knowingly and fraudulently obtained the goods that were charged to

his account. If there is sufficient evidence to support the jury's answer to Question No. 5 that appellant committed fraud, then the judgment based on fraud is sound.

■ By his third point of error, appellant complains that there is no evidence or insufficient evidence to support a finding of fraud. When we consider a legal sufficiency or no evidence point, we examine the record for evidence supporting the finding and ignore all evidence and inferences to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988). When we consider a factual sufficiency point of error, we examine all the evidence to determine if the finding is so contrary to the overwhelming weight and preponderance of the evidence that it is clearly wrong. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Shearson Lehman Hutton, Inc. v. Tucker*, 806 S.W.2d 914, 926 (Tex.App.—Corpus Christi 1991, writ dism'd w.o.j.); *Reviea v. Marine Drilling Co.*, 800 S.W.2d 252, 254 (Tex.App.—Corpus Christi 1990, writ denied). We may reverse if the great weight of the evidence mandates an opposite determination, and then we will show why the determination was so contrary to the evidence to be clearly wrong. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988); *Shearson Lehman Hutton, Inc.*, 806 S.W.2d at 926.

■ We have carefully reviewed the entire record. The record includes the Co-op manager's testimony that appellant, prior to purchasing additional goods, acknowledged his debts and promised to pay them in full. Relying on that promise, Austwell allowed appellant to purchase additional goods. Austwell's manager testified that appellant gave his relatives authority to purchase and pick up goods on his behalf. In response to interrogatories, appellant denied giving anyone such authority. Austwell's manager also testified that, after May 1989, appellant personally appeared at the Co-op "nearly all the time" and charged purchases to his account, that appellant never requested that the Co-op create accounts for Rodney Johnson Farms or Futuro Farms, and that appellant did

not claim that Austwell was improperly charging him with purchases attributable to other parties until he answered interrogatories in this case in March 1990. Two of appellant's former employees testified that appellant paid them wages from the three separate checking accounts, even though the employees never worked for Futuro Farms or Rodney Johnson. In addition, all purchases in question occurred during the period that Futuro Farms, Inc., appellant's wholly-owned corporation, had lost its charter, and appellant was personally liable for its debts.[1]

Appellant contends that the tender of payment with three checks from separate checking accounts establishes his claim that the goods were purchased on behalf of various farming operations and that Austwell improperly charged him for goods attributable to other parties. Appellant's father and cousin testified that on May 8, 1989, they discussed the billing problems with the Co-op's manager. Appellant also testified, through deposition, that he told the Co-op's manager that his account was improperly billed.

The jury may believe or disbelieve testimony of any witness. *Hipp v. J.D. Lowrie Well Service, Inc.*, 800 S.W.2d 668, 672 (Tex.App.—Corpus Christi 1990, writ denied). The weight and credibility of the testimony of any witness is determined by the fact-finder. Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony. *Spoljaric*, 708 S.W.2d at 434.

After reviewing the record, we are unable to state that the jury's finding is so against the great weight and preponderance of the evidence that it is manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). The evidence is legally and factually sufficient to support the jury's finding of fraud. Appel-

lant's third and fifth points of error are overruled.

By his first, second and fourth points of error, appellant complains of the sufficiency of the evidence to support a finding that Austwell suffered actual damages of $65,-722.11. Austwell produced evidence that, after May 8, 1989, appellant charged $193,-362.38 worth of products and was given credit for $127,640.27 in payments and returned products. Appellant did not dispute the accuracy of the invoices; he only argued that the charges were not attributable to him. Austwell established actual damages of $65,722.11 arising from fraud. Appellant's first, second and fourth points of error are overruled.

By his sixth point of error, appellant complains of the sufficiency of the evidence to support an award of exemplary damages. A party is entitled to exemplary damages based upon fraud. *Coronado Transmission Co. v. O'Shea*, 703 S.W.2d 731, 736 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). Having reviewed the record as discussed above, we find the evidence is sufficient to support the jury's award of exemplary damages. *See Tatum v. Preston Carter Co.*, 702 S.W.2d 186, 188 (Tex.1986); *Shearson Lehman Hutton, Inc.*, 806 S.W.2d at 925. The award of $10,000.00 exemplary damages bears a reasonable relationship to the actual damages awarded by the jury and is not excessive under the facts of this case. *See John Deere Co. v. May*, 773 S.W.2d 369, 379 (Tex.App.—Waco 1989, writ denied); *First State Bank v. Ake*, 606 S.W.2d 696, 702 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). Appellant's sixth point of error is overruled.

By his seventh point of error, appellant complains that the trial court erred by overruling his motion to disregard jury findings of fraud, actual damages and exemplary damages. The trial court may, upon proper motion, disregard any jury

---

1. If a corporation fails to pay franchise taxes, it forfeits its corporate privileges, and the directors and officers of the corporation are liable for debts incurred in this state after the tax is due and before the corporate privileges are revived. This personal liability is not affected by the revival of the charter or certificate and the corporate privileges. Tex.Tax Code Ann. § 171.-255 (Vernon 1982).

finding on a question that has no support in the evidence. Tex.R.Civ.P. 301. Having found evidence to support these findings, we overrule point of error seven.

By his eighth point of error, appellant complains that attorney's fees should not be awarded in a case of fraud. Attorney's fees are statutorily authorized for a breach of contract or action on a sworn account. *Gill Sav. Ass'n v. Chair King, Inc.*, 797 S.W.2d 31 (Tex.1990) (per curiam); *Worley v. Butler*, 809 S.W.2d 242, 245 (Tex.App.—Corpus Christi 1990, no writ); Tex.Civ.Prac. & Rem.Code Ann. § 38.001 (Vernon 1986). Attorney's fees may be awarded when a party recovers damages for a tort arising from a breach of contract. *Gill Sav. Ass'n*, 797 S.W.2d at 31; *Wilson v. Ferguson*, 747 S.W.2d 499, 504 (Tex.App.—Tyler 1988, writ denied).

Austwell pleaded the existence of the contract debt and presentment of charges due. The jury found that appellant had executed the account agreement in question and that $65,722.11 was due on the account. Austwell pleaded and the jury found that appellant had knowingly and fraudulently obtained the goods that were charged to his account. Attorney's fees may be awarded in this instance. Appellant's eighth point of error is overruled. Appellant's twelfth point of error, complaining that the trial court erred by overruling his motion to disregard jury findings on attorney's fees, is also overruled. Tex. R.Civ.P. 301.

By his thirteenth and fourteenth points of error, appellant complains that the judgment for attorney's fees is improper, since Austwell's attorney did not segregate time spent on the tort claim from time spent on the contract claim and did not segregate time spent pursuing third parties.

Attorney's fees may be recovered upon a finding of fraud arising out of a breach of contractual relations. *Gill Sav. Ass'n*, 797 S.W.2d at 31. If causes of action are so intertwined that they are more or less inseparable, the total amount of attorney's fees may be awarded and a segregation of work is unnecessary. *Richard Gill Co. v. Jackson's Landing*, 758 S.W.2d 921, 928–29 (Tex.App.—Corpus Christi 1988, writ denied); *Burditt v. Sisk*, 710 S.W.2d 114, 116 (Tex.App.—Corpus Christi 1986, no writ).

In the present case, the jury found fraud arising from a breach of contractual relations. Attorney's fees are, therefore, recoverable. Even if they were not so recoverable, the causes of action of fraud and breach of contract in this case are so intertwined that a segregation of work is unnecessary. No evidence was offered that Austwell had incurred additional attorney's fees as a result of its joinder of Rodney Johnson and Charles Schindler, I. Austwell's pleadings named these two individuals as parties but did not request judgment against them. Austwell's attorney testified that Rodney Johnson and Charles Schindler, I, had been joined for formal requirements only and that no attorney's fees were attributable to their joinder.[2] We overrule appellant's thirteenth and fourteenth points of error.

By his ninth point of error, appellant complains that appellee is not entitled to exemplary damages in a breach of contract case. Exemplary damages have been properly awarded in this case, since the jury found that appellant had committed fraud. *Crim Truck & Tractor Co.*, 35 Tex.S.Ct.J. at 345, 823 S.W.2d at 596; *Spoljaric*, 708 S.W.2d at 435. We overrule appellant's ninth point of error.

By his tenth point of error, appellant complains that the trial court should require Austwell to elect between inconsistent remedies for fraud and breach of contract prior to the entry of judgment. Where a party proves fraud arising from breach of contract, that party may recover attorney's fees and exemplary damages. *See Gill Sav. Ass'n*, 797 S.W.2d at 31–32. Since Austwell may recover attorney's fees

---

**2.** Appellant had joint bank accounts with Rodney Johnson and Charles Schindler, I. Johnson and Schindler, I, were joined as parties to obtain the bank records of these accounts and to avoid the applicability of Tex.Rev.Civ.Stat.Ann. art. 342–705 (Vernon Supp.1992).

and exemplary damages for appellant's fraud, it confronts no situation requiring an election. *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 367 (Tex. 1987); *Kish v. Van Note*, 692 S.W.2d 463, 466–67 (Tex.1985). We overrule appellant's tenth point of error.

■■■■■ By his eleventh point of error, appellant complains that the trial court failed to state the form of actual damages awarded. The judgment of the trial court should be framed to give the party all the relief to which he may be entitled. Tex. R.Civ.P. 301. *Birchfield*, 747 S.W.2d at 367. Austwell's pleadings requested actual damages, exemplary damages and attorney's fees. It is entitled to those awards upon the proper jury findings. Austwell pleaded breach of contract and fraud causes of action. The jury found breach of contract and fraud and made separate and distinct findings of actual damages of $65,-722.11 under each theory. The trial court granted judgment against appellant in the amount of $65,722.11, but did not specify whether such damages were for fraud or for breach of contract. Any error of the trial court in failing to state the form of the actual damages is harmless. Tex. R.App.P. 81(b)(1). We overrule appellant's eleventh point of error.

■■■■■ Appellant's fifteenth and sixteenth points of error complain that the trial court overruled his second and third motions for continuance. A trial court has discretion to grant or deny a motion for continuance, and an appellate court should reverse only upon a showing of abuse of discretion. *Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 795 (Tex.1987). The record must affirmatively establish that the trial court acted arbitrarily and unreasonably for an appellate court to reverse the trial court for abuse of discretion. *Simon*, 739 S.W.2d at 795; *Nautical Landings Marina, Inc. v. First Nat'l Bank*, 791 S.W.2d 293, 297 (Tex.App.—Corpus Christi 1990, writ denied). A complaining party bears the burden of presenting a sufficient record to show error. Tex. R.App.P. 50(d). Appellant provides no

record of the hearing on his second motion for continuance.

■■■■ Appellant has provided a record of the hearing on his third motion for continuance. That motion requested continuance on the grounds of appellant's illness and lack of opportunity for appellant and counsel to adequately develop available defenses. The record reflects that appellant's condition had improved since the hearing on his second motion for continuance, which was also urged on illness grounds. The record further indicates that appellant discharged his counsel and obtained new counsel two weeks before trial, despite his former counsel's warning that a continuance would not likely be granted and despite Austwell's response to appellant's motion to substitute counsel, that it would object to any motion for continuance by appellant based on inadequate preparation of counsel.

We cannot say that the trial court abused its discretion by denying appellant's third motion for continuance. We overrule appellant's fifteenth and sixteenth points of error.

We affirm the judgment of the trial court.

### OPINION ON MOTION FOR REHEARING

Charles J. Schindler, II, moves this court to rehear his appeal stemming from a judgment entered after a jury found breach of contract and fraudulent misrepresentation issues against him and found actual damages of $65,722.11 arising from each issue. Appellant argues that when a party to a contract suffers only economic loss to the subject matter of the contract, the action sounds in contract alone and exemplary damages may not stand. We overrule the motion for rehearing.

■■■■ The general rule is that the failure to perform the terms of a contract is a breach of contract, not a tort. *See International Printing Pressmen & Assistants' Union v. Smith*, 145 Tex. 399, 198 S.W.2d 729, 735–36 (1946). When a party suffers only economic injury to the subject

matter of the contract, the action sounds in contract, not in tort. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). However, a party who promised to do a future act with no intent to perform and with intent to deceive may be liable for fraud. *Crim Truck & Tractor Co. v. Navistar Int'l Transp.*, 823 S.W.2d 591, 597 (Tex.1992); *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex.1986). The question becomes whether fraud under the *Spoljaric* theory overcomes the *Jim Walter Homes* requirement of a distinct actual injury.

In *Spoljaric*, an executive was fraudulently promised a bonus if he agreed to continue employment with the company. The jury found an oral contract to pay the bonus, breach of the contract, and fraudulent misrepresentation. The jury found $30,000 actual damages and $750,000 punitive damages. The Court of Appeals reversed and rendered on the misrepresentation issue, holding that there was no evidence to support the finding. *Id.* at 434. The Supreme Court reversed the decision of the Court of Appeals and remanded for consideration of factual sufficiency points, finding there was some evidence of the defendant's lack of intent to perform under the contract. *Id.* at 436. The significance of *Spoljaric* in this context is that the only injury the plaintiff suffered was the unpaid bonus due under the oral contract, yet the right of the plaintiff to recover punitive damages was upheld, since "[a] finding of intent to harm or conscious indifference to the rights of others will support an award of exemplary damages." *Id.* at 436.

Appellant cites *American Nat'l Petroleum Co. v. Transcontinental Gas Pipe Line Corp.*, 798 S.W.2d 274 (Tex.1990) and *Hebisen v. Nassau Development Co.*, 754 S.W.2d 345, 348 (Tex.App.—Houston [14th Dist.] 1988, writ denied) for the proposition that a distinct actual damage must be attributable to the tort and not attributable to the breach of contract for the tort to survive.

In *Hebisen*, a jury found that the defendant breached a rental agreement and never intended to perform some of its terms,

that the plaintiff relied on the misrepresentations to his detriment, and that the defendant made the representations with intent that the plaintiff would act upon them. The evidence was held to be sufficient. *Hebisen*, 754 S.W.2d at 348. The Court of Appeals, however, reversed the award of punitive damages because the only actual damages were "the economic loss to the subject of the contract itself." *Id.* at 348. *Hebisen* is the only case we have found that applies *Jim Walter Homes* to reverse a jury finding of fraud and a jury finding of actual damages due to fraud.

In *American Nat'l Petroleum*, a mineral rights owner sued a purchaser for breach of contract and tortious interference with a gas balancing agreement it held with a third party. The Texas Supreme Court was asked whether a tort finding could stand when the party failed to submit a jury issue on actual damages. The Court answered that the defendant waived error when it stipulated actual tort damages were equal to damages on the contractual breach. *American Nat'l Petroleum*, 798 S.W.2d at 278. No distinct injury attributable only to the tort and not to the contract was found by the jury. The Court noted that the measure of damages in a commercial relations tort may be "economic," but that they are, nevertheless, damages for the tort. "The basic measure of actual damages for tortious interference with contract is the same as the measure of damages for the breach of the contract interfered with, to put the plaintiff in the same economic position he would have been in had the contract interfered with been actually performed." *Id.* at 278.

We understand that in *American Nat'l Petroleum*, the breached contract was not the same contract as that which was tortiously interfered with by the defendant. We do note, however, the stipulation that damages due to defendant's breach were equal to damages caused by defendant's tortious conduct, the ruling that actual tort damages were established, and the ruling that exemplary damages may follow, and we conclude that *American Nat'l Petroleum* is no authority for the argument that an injury attributable to the tort alone

must be proven for a tort to survive when a contract is breached.

Appellant also relies heavily on Justice Gonzalez's dissent in *American Nat'l Petroleum.* Justice Gonzalez would have required the plaintiffs to prove a distinct tortious injury with actual damages. *Id.* at 283 (Gonzalez, J., dissenting). We are bound, however, only by the majority opinion. We note that the cases Justice Gonzalez cites in his *American Nat'l Petroleum* dissent, with the exception of *Hebisen,* do not include a situation in which a jury found fraud and actual damages arising from fraud. In *Adolph Coors v. Rodriguez,* 780 S.W.2d 477, 485 (Tex.App.—Corpus Christi 1989, writ denied), the tort was negligence, not fraud. In *Lone Star Steel Co. v. Scott,* 759 S.W.2d 144, 156 (Tex. App.—Texarkana 1988, writ denied), the court found no evidence of fraudulent misrepresentation. In *Bellefonte Underwriters Ins. Co. v. Brown,* 704 S.W.2d 742, 745 (Tex.1986), the jury found no damages arose from the tort. Finally, in *International Bank, N.A. v. Morales,* 736 S.W.2d 622 (Tex.1987), and *Texas Nat'l Bank v. Karnes,* 717 S.W.2d 901 (Tex.1986), there was no jury finding that any tort was committed.

Two arguments can be advanced to decline to extend the *Jim Walter Homes* rule to a case in which the tort complained of is fraudulent inducement to contract. First, the rationale for *Jim Walter Homes* is that contractual remedies are limited to compensatory damages in common law and by statute, regardless of the culpable mental state of the breaching party. *Jim Walter Homes, Inc.,* 711 S.W.2d at 618. The purpose of this breacher-friendly rule is to promote economic efficiency by allowing a party to intentionally remove himself from a contract that becomes unfavorable under later market conditions. The general policy is that the aggrieved party deserves the benefit of the bargain, but the aggrieving party does not deserve punishment. *See* RESTATEMENT (SECOND) OF CONTRACTS § 355 comment a (1981). This rule should not be extended to benefit parties who fraudulently enter contracts they have no intention of performing.

Second, appellant's argument that any tort committed in a contractual relationship must have a damage element independent of any damages suffered to the subject matter of the contract would completely eliminate fraudulent misrepresentation in procurement of a contract as a tort. Only under the rarest of circumstances will a party be able to show some personal injury or harm to property not the subject of the contract to support a tort finding. If appellant's position is the state of the law and the policy of the courts of this state, *Spoljaric* would not be constantly cited for the proposition that fraudulent entry to contract is a tort.

We are of the opinion that a party who enters a contract with no intention of performing, shows intent to harm or conscious indifference to the rights of others and is liable for exemplary damages. *Spoljaric,* 708 S.W.2d at 436. We decline to follow the reasoning of the Fourteenth District Court of Appeals and hold that a jury finding of fraudulent misrepresentation and a jury finding of actual damages caused by the misrepresentation, will support an award of exemplary damages. We overrule the motion for rehearing and affirm the judgment of the trial court.