# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

=====

### NO. 03-06-00259-CV

=====

**Appellant, TerrAgora Investments, L.P. // Cross-Appellants, Niteclubs Enterprises, Inc. and Warren Dronebarger**

**v.**

**Appellee, Niteclubs Enterprises, Inc. // Cross-Appellee TerrAgora Investments, L.P.**

=====

**FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
NO. 284,238, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING**

=====

## M E M O R A N D U M   O P I N I O N

In this landlord-tenant dispute, all parties—TerrAgora Investments, L.P., Niteclubs Enterprises, Inc., and Warren Dronebarger—sued each other on multiple causes of action.[1] The trial court granted partial summary judgment in favor of each party on certain issues, and following a jury trial, the court entered judgment that TerrAgora recover $200 in actual damages and that Niteclubs recover $40,000 in actual damages. Both sides appeal. We affirm the trial court's judgment.

---

[1] Because their interests align, except where reciting facts, we refer to Niteclubs and Dronebarger collectively as "Niteclubs."

**Background**

TerrAgora and Arrakis Production, Inc. signed a commercial lease agreement on June 28, 1995. In November 1996, Arrakis subleased the premises to Warren Dronebarger and Niteclubs. The lease agreement applied to the first floor of a building located at 213 West Fourth Street in Austin. From November 1996 through September 2, 2004, Dronebarger and Niteclubs subleased the premises to a third party. After Niteclubs's sublessee vacated the premises in September 2004, Niteclubs made preparations to open and operate a bar to be called Boyz Cove.

In a letter dated November 2, 2004, TerrAgora notified Niteclubs of several matters to be addressed under the lease agreement, including additional insurance coverage, proof of remediation of city code violations, proof of liquor license, and certificate of occupancy. In addition, the letter notified Niteclubs that TerrAgora disapproved of a sign in the window of the premises and required that it be removed.

These issues were not addressed to TerrAgora's satisfaction, and, on December 7, 2004, TerrAgora delivered a notice of termination to Niteclubs. According to TerrAgora, it was terminating the lease because of Niteclubs's failure to cure all lease defaults set out in the November 2 letter within thirty days, as required by the lease agreement. TerrAgora also notified Niteclubs that TerrAgora had "entered upon and take[n] possession of the premises, and altered the locks in order to secure the contents, and to protect its interests."

On January 6, 2005, Niteclubs filed a petition for writ of reentry pursuant to section 93.003 of the property code. *See* Tex. Prop. Code Ann. § 93.003 (West 2007). Niteclubs's petition was denied by the justice court, and on February 15, 2005, Niteclubs appealed the decision

to the county court. The county court dismissed Niteclubs's appeal on March 10, 2005. The next day, Niteclubs filed suit in county court, claiming breach of the lease agreement and wrongful exclusion. Niteclubs also asked the court for a declaratory judgment authorizing it to take possession of the premises and for a temporary injunction to prevent TerrAgora from selling or disposing of its property located on the premises. The trial court granted Niteclubs's request for temporary injunction. TerrAgora answered and filed a counterclaim against Niteclubs and a third-party claim against Dronebarger, alleging breach of the lease agreement.

All parties filed motions for partial summary judgment. The trial court granted each motion in part. The trial court found the following as a matter of law on summary judgment:

(1)     The Lease did not require that a bar be continually operated on the leased premises;

(2)     TerrAgora (Landlord) gave notice of noncompliance to Niteclubs (Tenant) in its November 2, 2005 letter but demand for compliance within 5 days was not authorized by the lease; however, the lease requires no demand, and demand is specifically waived in the Lease; once the Landlord gives notice of noncompliance, the Tenant has the obligation to come into compliance within 30 or (or 90) [sic] days, or the Landlord can act without further notice; and

(3)     there is a fact issue as to whether insurance, an obligation of the Tenant, by its nature cannot be cured within 30 days.

The remaining issues were tried to a jury in November 2005. All parties filed motions to disregard certain jury findings and for judgment notwithstanding the verdict. Based on the jury findings, the court entered final judgment awarding TerrAgora $200 in actual damages and

3

Niteclubs $40,000 in actual damages and granting Niteclubs's request to enjoin TerrAgora from "conducting any sale to dispose of [Niteclubs's] property." The court did not award attorneys' fees.[2]

**Discussion**

TerrAgora Investments argues that the trial court had no jurisdiction to hear the case, misconstrued certain provisions of the lease, erroneously submitted certain issues to the jury, erroneously admitted expert testimony, and failed to disregard certain jury answers that were contrary to conclusively established facts. Niteclubs challenges the trial court's judgment, arguing that the trial court erred in not disregarding the jury finding that TerrAgora did not breach the lease agreement and in not awarding attorneys' fees to Niteclubs.

*TerrAgora's appeal*

In its second issue, TerrAgora challenges the trial court's partial summary judgment in favor of Niteclubs. TerrAgora argues that the trial court misconstrued the provision of the lease agreement that, according to TerrAgora, requires Niteclubs to operate continuously as a restaurant and bar. Since TerrAgora failed to operate as a restaurant and bar during the entire term of its lease, TerrAgora contends, Niteclubs breached the lease agreement as a matter of law.

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is proper when there are no disputed issues

---

[2] Although the jury answered questions about the amount of attorneys' fees that would be reasonable and necessary as to each party, none of the questions submitted asked the jury to award attorneys' fees.

4

of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c).

When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, and

we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence*

*Operating Co.*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215.

TerrAgora specifically challenges the trial court's construction of the following

provision in the lease:

> 5.01 USE AND OPERATION OF leased premises. Tenant shall use the leased premises for the purpose of operating a restaurant and bar and shall not use the leased premises for any other purpose without the express written consent of Landlord. Tenant shall at all times operate this restaurant and bar in full accordance with applicable laws and regulations. Tenant shall operate in a manner that does not disturb, with noise, odors, wastes, or access, the other tenants in the building in their reasonable enjoyment of their leased spaces for general office use.

According to the trial court's summary judgment, "[t]he Lease did not require that a bar be

continually operated in the leased premises." We agree with the trial court's construction.

Where, as here, a written contract is worded so that it can be given a certain or

definite meaning or interpretation, it is unambiguous and the court construes it as a matter of law.

*See American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003); *Columbia Gas*

*Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996) (ambiguity does

not exist merely because the parties forcefully assert diametrically opposed interpretations). A

provision directing that a tenant shall only use a property for the limited purpose of operating a

restaurant and bar does not suggest that such restaurant and bar must be in continuous operation.

Rather, the provision merely requires that the tenant "shall not use the leased premises for any

5

other purpose without the express or written consent of the Landlord." To interpret such a provision otherwise would create a situation in which, as here, a tenant would be in violation of the lease during the period in which he was preparing his restaurant/bar for opening. A tenant would also be in violation of the lease, for example, during periods in which the business was closed for needed repairs and/or maintenance, closed to transition from one restaurant/bar business to another, or closed pending transition between lessees. The relevant provision of the lease simply does not provide for the specific use of the premises to be continuous. If the landlord not only wanted a specific use, but also to have that use be continuous, the lease would need to provide for such as a requirement. The lease here does not. As a matter of law, Niteclubs was not required, under the lease at issue, to operate a restaurant and bar on the premises in a continuous, uninterrupted manner. Accordingly, we overrule TerrAgora's second point of error.

In its first issue, TerrAgora argues that the trial court erred in exercising jurisdiction over the issue of possession and conversion, as these matters lie within the exclusive jurisdiction of the justice court pursuant to property code sections 93.002 and 93.003. *See* Tex. Prop. Code Ann. §§ 93.002-.003 (West 2007). According to TerrAgora, the right to possession had been finally determined by the justice court when it denied Niteclubs's petition for reentry. By submitting the issue of conversion to the jury in the trial court—an issue completely dependent on the right to possession—and then failing to disregard the jury's finding, TerrAgora contends, the trial court allowed the parties to relitigate an issue that had already been finally determined by the justice court.

Questions of jurisdiction are questions of law, which we review de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2006). Section 93.003 of the property code applies when

6

"a landlord has locked a tenant out of leased premises in violation of Section 93.002." Tex. Prop. Code Ann. § 93.002(a). As TerrAgora notes, suits to recover possession under this section are required to be filed in the justice court in the precinct in which the rental premises are located. *Id.* § 93.002(b). TerrAgora argues that a determination by the justice court under section 93.002 determines the right to possession under the lease and that any additional litigation to determine possession is barred by res judicata and collateral estoppel.

In support of its right to take possession of Niteclubs's personal property as well as the premises in the event of default, TerrAgora cites to the following provision of the lease agreement:

> Upon occurrence of an event of default by Tenant, Landlord may, in addition to any other remedies provided herein or by law, enter upon the leased premises and take possession of any and all goods, wares, equipment, fixtures, furniture, and other personal property situated on the premises without liability for trespass or conversion and sell the same upon five day's [sic] written notice to Tenant at public or private sale . . . .

In its order, the justice court determined only that Niteclubs had "not shown what needs to be shown for obtaining a writ of reentry, or damages," not whether Niteclubs defaulted under the terms of the lease agreement. Any number of situations could allow TerrAgora the right to possession under the terms of the agreement, absent any default by Niteclubs. TerrAgora was only authorized to take possession of the premises and to sell Niteclubs's personal property in the event of Niteclubs's default. Default was not determined by the justice court, and the trial court acted within its jurisdiction in considering and determining Niteclubs's claim for conversion. We overrule TerrAgora's first point of error.

7

TerrAgora's third point of error also addresses Niteclubs's conversion claim. TerrAgora argues that, under the terms of the lease agreement, the trial court erred in submitting the conversion issue to the jury, as the lease prohibited liability for conversion in the event that the tenant breached the agreement. According to TerrAgora, "Nite Club was found to have breached the lease."

TerrAgora's assertion that "[t]he jury found, and the County Court agreed that Nite Club breached the Lease" is not supported by the record. The jury found that TerrAgora did not "fail to comply with the lease by terminating it on December 7, 2004." However, the jury did not find that Niteclubs breached the lease. Even the accompanying instruction allows no such inference:

> TerrAgora had the right to terminate the lease and it would not be a failure to comply by Terragora [sic] if Niteclubs failed to procure commercial property damage insurance in the amount required by the lease within 30 days after written notice; or, if the procurement of such insurance is something which, by its very nature, cannot be done in 30 days, Niteclubs did not proceed with all due diligence to procure such insurance.

The jury question is couched solely in terms of TerrAgora's compliance with the lease. There was no jury question submitted inquiring as to whether Niteclubs breached the lease, and the jury made no finding on the issue. Thus, the trial court did not err in submitting the conversion issue to the jury. We overrule TerrAgora's third issue.

TerrAgora's fourth issue challenges the trial court's award of damages for conversion. According to TerrAgora, the trial court erroneously submitted an instruction that included loss of business value as a part of the measure of damages for conversion.

8

A court is required to submit to the jury questions, instructions, and definitions that are raised by the written pleadings and evidence. Tex. R. Civ. P. 278. To determine whether the trial court should have submitted Niteclubs's issues to the jury, we examine the record to determine if the pleadings and legally sufficient evidence support them. *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992). We review a trial court's decision to submit or refuse a particular instruction under an abuse of discretion standard of review. *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000). A trial court abuses its discretion by acting arbitrarily, unreasonably, or without consideration of guiding principles. *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996).

Niteclubs's pleadings included the following relating to its cause of action for conversion:

> 28. Niteclubs owned or possessed the personal property located in the premises and TerrAgora wrongfully exercised dominion or control over it.

The following question was submitted to the jury regarding conversion:

> Did TerrAgora convert the personal property and equipment of Niteclubs?

The jury answered "yes," and was, therefore, instructed to answer the following question:

> What sum of money, if paid now in cash, would fairly and reasonably compensate Niteclubs for damages proximately caused by the conversion by TerrAgora?

Accompanying instructions explained:

9

Consider only the loss, if any, of the value of Niteclubs' business. Do not add interest on any amount of damages you find. The loss of value of a business is the difference between its market value immediately before it was destroyed, if it was, and its market value immediately after it was destroyed, if it was. "Market value" is the price a business would bring if it were offered for sale by a willing seller who desires to sell, but is under no necessity of selling, to a willing buyer who desires to buy, but is not required to buy.

The jury awarded $40,000 in damages.

TerrAgora argues that Niteclubs failed to include business value in its claim for conversion. In addition, the question submitted to the jury on liability for conversion included nothing about conversion of business value. Therefore, TerrAgora contends, the trial court erred by instructing the jury to consider loss of business value in its instructions to the jury. We agree. Submission of the instruction that included loss of business value as a measure of damages for conversion was supported by neither the pleadings nor by the evidence. *See* Tex. R. Civ. P. 278; *Elbaor*, 845 S.W.2d at 243.

To determine whether this error in the jury charge is reversible, we consider the parties' pleadings, the evidence presented at trial, and the jury charge in its entirety. *Rosell*, 89 S.W.3d at 653. We will reverse if we find that an error in the jury charge caused an improper judgment to be rendered. Tex. R. App. P. 44.1(a)(1); *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006); *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 723 (Tex. 2003).

Although the jury was instructed to consider loss of business value in determining conversion damages, the jury charge on conversion liability asked only whether TerrAgora converted the personal property and equipment of Niteclubs. Having found that TerrAgora was liable for

10

conversion of Niteclubs's personal property and equipment, the jury awarded damages in the amount of $40,000.

The record includes evidence of Niteclubs's value as a going concern and evidence of the value of Niteclubs's personal property and equipment. According to Dronebarger, who presented expert testimony of Niteclubs's business value, the value of the business on December 7, 2004, was about $500,000. After TerrAgora had taken possession of the premises, however, Dronebarger opined that the business was worth only about $20,000 to $25,000, which, according to Dronebarger, represents half the value of the equipment and personal property. In addition, a statement of expenses at Boyz Cove from August through December of 2004, includes an itemized list of the value of all of the equipment. According to the report, the total equipment value was $39,155. The jury's damage award of $40,000 is consistent both with Dronebarger's testimony that half the value of his equipment was $20,000 to $25,000 and with the report that calculated the value of all equipment to be $39,155. Based on the pleadings, the evidence, and the jury charge, it appears that the jury awarded damages based on the value of the equipment and personal property, despite having been instructed as to the value of the business. As sufficient evidence supports the damage award, the erroneous jury instruction did not cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1); *Shupe*, 192 S.W.3d at 579; *Wal-Mart Stores, Inc.*, 106 S.W.3d at 723. We overrule TerrAgora's fourth issue.

In its fifth issue, TerrAgora argues that the trial court erred in admitting expert opinion testimony of Warren Dronebarger on the issue of damages. We review a trial court's decision to admit expert testimony under an abuse of discretion standard. *See E. I. du Pont*

11

*de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). For the improper admission of expert testimony to be reversible, the erroneous admission must have "probably caused the rendition of an improper judgment" or "probably prevented the appellant from properly presenting the case to the court of appeals." *See* Tex. R. App. P. 44.1.

TerrAgora objects to Dronebarger's business value testimony. As we have discussed, the damage award was supported by sufficient evidence of the value of the personal property located on the premises. Based on the pleadings, the evidence, and the jury charge, it appears that the jury returned a verdict consistent with the evidence as to the value of the equipment, and not consistent with Dronebarger's business-value testimony. Thus, admission of Dronebarger's expert testimony, even if erroneous, was harmless. Accordingly, we overrule TerrAgora's fifth issue.[3]

In its sixth issue, TerrAgora argues that the trial court erred in failing to disregard certain jury answers that "were contrary to the conclusively established and undisputed facts establishing [TerrAgora's] damages." TerrAgora's argument on this point is based on its contention that the "[l]ease expressly entitled Landlord to 'the amount of all loss and damage which the landlord may suffer by reason of such termination.'" According to TerrAgora, its damages were conclusively established by certain exhibits and testimony and that "[t]here was no cross examination of this evidence after it was presented."

The lease provision cited by TerrAgora is a remedy provision for the "occurrence of any such events of default." As we have discussed, the jury made no finding that Niteclubs

---

[3] TerrAgora does not challenge Dronebarger's testimony as it relates to the value of Niteclubs's equipment.

defaulted under the terms of the lease agreement. The jury's finding was couched solely in terms of TerrAgora's compliance with the lease. In the absence of a finding of default by Niteclubs, even if the jury determined that TerrAgora did not "fail to comply with the lease by terminating it on December 7, 2004," and even if TerrAgora "conclusively established" some measure of damages, TerrAgora is not entitled to damages available as a result of default. We overrule TerrAgora's sixth issue.

TerrAgora's seventh issue is also based on the premise that Niteclubs defaulted under the lease agreement. According to TerrAgora, because "the judgment upholds the jury finding that Nite Club breached the Lease," the trial court was required to award attorneys' fees in the amount determined by the jury.[4] As the jury made no such finding, however, the trial court's refusal to award attorneys' fees was consistent with the jury's determination.

In its eighth issue, TerrAgora challenges the trial court's submission of certain instructions, definitions, and questions. Specifically, TerrAgora challenges the conversion instruction in light of Niteclubs's breach of the lease, the loss of business value as an element of damages for conversion, the issue of waiver as it relates to conversion, and the measure of conversion damages. As we have already addressed and overruled each of these issues, we, likewise, overrule TerrAgora's eighth issue.

---

[4] As noted above, although the jury answered questions about the amount of attorneys' fees that would be reasonable and necessary as to each party, none of the jury's findings actually awarded any attorneys' fees.

13

*Niteclubs's appeal*

In its first issue, Niteclubs challenges the trial court's refusal to disregard the jury's finding that TerrAgora did not breach the lease agreement. According to Niteclubs, a ninety-day cure period rather than a thirty-day cure period applied to Niteclubs's procurement of additional insurance coverage under the terms of the lease. Niteclubs contends that because TerrAgora denied Niteclubs the ninety-day cure period allowed under the lease agreement, TerrAgora breached the agreement as a matter of law. In the alternative, Niteclubs argues that the jury's finding that TerrAgora did not breach the lease agreement was against the great weight and preponderance of the evidence and should have been disregarded by the trial court.

Whether a contract is ambiguous is a question of law for the court. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). A contract is unambiguous when its meaning is susceptible to only one reasonable interpretation. *Id.*

According to the lease agreement:

17.01 TENANT DEFAULT AND REMEDIES. The following events shall be deemed to be events of default by Tenant:

. . . .

B.     Tenant shall fail to comply with any term, provision, or covenant of this Lease, other than the payment of rent, and shall not cure such failure within thirty days after written notice thereof to Tenant, or if such failure by its nature cannot be cured within thirty days, Tenant shall not have proceeded with all due diligence to cure such failure in a manner that such failure is cured in any event within ninety days after written notice thereof to Tenant.

14

The provision of the contract at issue can be given only one reasonable interpretation—that a failure to comply with the lease must be cured by the tenant within thirty days, or, if the failure cannot be cured within thirty days, the tenant must proceed with "due diligence" and accomplish the cure no later than within ninety days. The contract is unambiguous. *See id.* In addition, Niteclubs challenges only the trial court's refusal to disregard the jury's finding, not the trial court's judgment that "there is a fact issue as to whether insurance, an obligation of the Tenant, by its nature cannot be cured within 30 days." In reviewing the trial court's refusal to disregard the jury's finding, we consider and weigh all the evidence in the record and will reverse the judgment only if it is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

Niteclubs's argument specifically addresses the application of the thirty-day cure period rather than the ninety-day cure period. However, the jury was not instructed to—and did not—make such a finding. Rather, the court submitted the following instruction to the jury:

> TerrAgora had the right to terminate the lease and it would not be a failure to comply by Terragora [sic] if Niteclubs failed to procure commercial property damage insurance in the amount required by the lease within 30 days after written notice; or, if the procurement of such insurance is something which, by its very nature, cannot be done in 30 days, Niteclubs did not proceed with all due diligence to procure such insurance. "Due diligence" means such diligence as would be used by a reasonably prudent person under the same or similar circumstances.

Based on the contract and the jury's instruction, even accepting Niteclubs's assertion that the ninety-day cure period should apply to the procurement of insurance, Niteclubs was required to proceed

15

with due diligence to procure the additional insurance. The record supports the jury's conclusion that Niteclubs did not.[5]

Niteclubs cites to Dronebarger's testimony that on November 3, 2004, the day after he received TerrAgora's letter listing items of noncompliance, he called C&S, his insurance carrier, to request an increase in coverage. In addition, Niteclubs points to Dronebarger's telephone records that show that a three-minute call was placed to C&S on November 3. Despite the phone record, however, TerrAgora disputes Dronebarger's testimony, citing the testimony of employees of C&S who denied having ever received the call based, in part, on the fact that they had no record of it. In light of this conflicting testimony, it was within the province of the jury to believe the testimony of the C&S employees over the testimony of Dronebarger. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

In addition, Niteclubs admits that Dronebarger's single phone call to C&S was the sole effort it made to procure additional insurance coverage, explaining that Dronebarger "had no reason to think his insurance agent had not complied with his request," that "[i]n his experience, a call requesting the coverage was all that was required," and that "[h]e thought the landlord would have the courtesy to call him if there were a problem." Believing the matter to have been taken care of, Dronebarger did not follow up with either TerrAgora or with the insurance company to verify and to document that his insurance coverage had been increased as requested.

---

[5] As discussed above, the jury made no finding that Niteclubs defaulted under the terms of the agreement. Rather, the jury found that TerrAgora "did not fail to comply with the lease" by terminating it based on Niteclubs's failure to procure additional insurance by December 7, 2004.

16

Having weighed the evidence, the jury could have determined that the actions taken by Niteclubs to procure and verify the existence of additional insurance coverage did not amount to due diligence. The evidence supports a finding by the jury that Niteclubs failed to exercise due diligence in procuring the additional insurance coverage required under the terms of the lease agreement. *See Dow Chem. Co.*, 46 S.W.3d at 242. Accordingly, we overrule Niteclubs's first issue.

In its second issue, Niteclubs argues that it was entitled to an award of attorneys' fees because, as a matter of law, attorneys' fees are recoverable in cases of conversion arising from breach of contract. To support its position, Niteclubs cites several cases in which attorneys' fees were awarded where the tort theory was "intrinsically founded in the interpretation of a contract." *See Gill Sav. Ass'n v. Chair King, Inc.*, 797 S.W.2d 31 (Tex. 1990); *Schindler v. Austwell Farmers Co-op*, 829 S.W.2d 283 (Tex. App.—Corpus Christi 1992), *aff'd as modified on other grounds*, 841 S.W.2d 853 (Tex. 1992); *High Plains Wire Line Servs., Inc. v. Hysell Sire Line Serv., Inc.*, 802 S.W.2d 406 (Tex. App.—Amarillo 1991, no writ); *Wilson v. Ferguson*, 747 S.W.2d 499 (Tex. App.—Tyler 1988, writ denied). In each of the cited cases, however, attorneys' fees were not only based on the interpretation of a contract but were also awarded to the party that had prevailed on, and received damages for, its breach of contract claim. Here, while the jury found in favor of Niteclubs on its conversion claim, the jury expressly found that TerrAgora did not "fail to comply with the lease by terminating it" when it did. As this result did not depend on whether or not TerrAgora had breached the contract and, in fact, there was no finding of breach, the conversion cannot be said to have "arise[n] out of a breach of contract." Given that Niteclubs did not prevail

17

on its corresponding breach of contract claim, it is not entitled to an award of attorneys' fees for conversion arising out of breach of contract.

**Conclusion**

Having overruled all issues raised by the parties, we affirm the judgment of the trial court.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   February 27, 2009

18