**MASSIE et al. v. DE SHIELDS.**

No. 11270.

Court of Civil Appeals of Texas. Dallas.

June 3, 1933.

Rehearing Denied July 8, 1933.

H. L. Davis, W. R. & W.' P. Abernathy, John Doyle, and T. C. Andrews, all of McKinney, for appellant.

G. R. Smith, of McKinney, for appellee.

BOND, Justice.

Alice De Shields brought this suit in the district court of Collin county against J. W. Ashley and his sureties on two guardianship bonds, to recover the amount of the judgment rendered in her favor by the probate court of said county, in settlement of her estate, and to adjust the equities between the two sets of sureties.

On May 3, 1917, the probate court of Collin county appointed J. W. Ashley temporary guardian of the estate of said Alice De Shields, a minor. The notice of said appointment was published, as required by law, and the temporary guardian qualified and filed his bond in the sum of $9,000, with Sam J. Massie, Morgan Weaver, and W. H. Mathews as sureties, which bond was duly approved by said probate court. Thereupon said guardian took charge of said estate, obtaining from the previously appointed guardian complete control of the real estate and cash belonging to said minor, in the sum of $4,100, which estate he managed to June 15, 1931, when he was discharged.

On April 5, 1922, on proper application, report, and approval, the guardian sold the real estate belonging to said ward for the sum of $275, and, as required by law, posted a bond in the sum of $550, with S. H. Abbott and C. M. Abbott as sureties, to secure the proceeds of such sale.

On June 2, 1931, the guardian filed in said probate court his final account. On a hearing the court established the amount due by him to his said ward to be the sum of $5,497.27, and attempted to adjust the equities between the two sets of bondsmen, finding that J. W. Ashley, as principal, and Sam J. Massie, Morgan Weaver, and W. H. Mathews, as sureties, were liable to said ward in the sum of $5,104.96, and that said Ashley and S. H. Abbott and C. M. Abbott, as sureties, were liable in the sum of $392.31, and directed payment of said sums to said ward accordingly.

On August 22, 1931, appellee instituted this suit, seeking recovery against said guardian and his several sureties. W. H. Mathews having died ad interim, T. C. Andrews, administrator of his estate, was made party defendant. Upon trial before the court without a jury, judgment was rendered in favor of appellee and against appellants for the amount of the judgment of the probate court, and the amount established was apportioned as follows: Against said J. W. Ashley, guardian, and S. J. Massie, Morgan Weaver, and T. C. Andrews (administrator of the estate of W. H. Mathews, deceased), sureties, jointly and severally, for the sum of $5,104.96, with interest from July 15, 1931, totaling $5,278.42; and against J. W. Ashley, guardian, and C. M. Abbott, surety (S. H. Abbott died insolvent), for the sum of $392.31, with interest from July 15, 1931, totaling $404.72—further

ordered the judgment thus rendered against T. C. Andrews, administrator, to be certified to the probate court of Collin county for payment in due order of administration, and further decreeing that each defendant surety have judgment against his cosurety for contribution.

Appellants, sureties on the temporary guardian's bond, do not assail the amount of the devastavit established by the probate court, or the adjustment of the equities between the two sets of bondsmen, attempted by said court. Their contentions on this appeal are based on assignments that (1) the bond never became effective as a permanent guardianship bond, therefore the sureties were not liable on the devastavit; (2) appellee's cause of action is barred by the two and four years' statutes of limitation; (3) appellee was guilty of laches, thus causing the action to become stale; and (4) as to appellant Andrews, administrator, the claim against Mathews, deceased, being specific and certain, and not having been presented to the administrator, as provided by law, the district court was without jurisdiction to adjudicate the issue against said administrator.

■■ The temporary guardian's bond is the means by which the minor's property was delivered to the guardian, and by virtue thereof the principal took possession of his ward's property, and managed and controlled it; thus the liability of the sureties is fixed, and they are estopped to deny liability, on the ground that the bond to which they subscribed was merely a temporary obligation. It is immaterial whether the guardian's appointment was temporary or permanent; whatever appointment was made, the sureties stood responsible for the guardian's acts, and they are not permitted by law to deny the capacity in which he secured and managed the minor's estate, so long as he was acting under his appointment. "By the great weight of authority, the invalidity of the guardianship appointment does not invalidate the bond as against the sureties, if the bond recites the guardianship the sureties are thereby estopped to deny it." 21 Cyc. 223.

Article 4137, R. C. S., statutes provides: "Immediately after the appointment of a temporary guardian, the clerk of the court shall issue notice which shall state the name of the person appointed and when so appointed, and the name of the minor, or minor's estate, or both, which notice shall cite all persons interested in the welfare of such minor to appear at the term of court named in such notice, and contest such appointment if they so desire; and that, if such appointment is not contested at the term of court so named in the citation, then the same shall become permanent."

It is evident that the Legislature intended that no order is necessary to make the tem-

porary appointment permanent, when no contest of such appointment is made. Under such appointment, the temporary guardian continued in permanent possession to manage and control the property, and by virtue thereof the principal and sureties became liable on the temporary bond for all acts and breaches of such guardian.

In the case of Gann v. Kern (Tex. Civ. App.) 249 S. W. 878, in which the Supreme Court denied a writ of error, the sureties on a temporary guardianship bond sought to deny liability, on the ground that no order was entered by the probate court making such temporary appointment permanent. The court holds that no such order was necessary, apparently arriving at such conclusion by construing the statutes regarding the appointment of temporary guardians. In the case at bar, the temporary guardian was appointed, a temporary guardianship bond approved, and citation issued, as required by law. At the term of the court named in the order and in the citation, no contest of the appointment was made; thus such temporary appointment became permanent perforce of the statute, and the bondsmen's liability continued in effect.

■■ The condition precedent for an order making a temporary appointment permanent and the posting of a permanent guardianship bond is the filing of the contest to such appointment. In the absence of such contest, the appointment ipso facto becomes permanent. The sureties, in executing the temporary bond, guaranteeing "that the guardian will faithfully discharge the duties of temporary guardian," must necessarily take notice of the statute allowing the temporary appointment to become permanent, as the statute must be read into the obligation of the bond. Therefore the judgment of the probate court of Collin county, having been rendered by a court of competent jurisdiction, is conclusive of the amount of the devastavit established, and the sureties are indebted to appellee by virtue of their said relationship. Minchew v. Case (Tex. Civ. App.) 143 S. W. 366; Portis v. Cummings, 21 Tex. 266; Parker v. Campbell, 21 Tex. 763; Martin Brown Co. v. Perrill, 77 Tex. 199, 13 S. W. 975; Gann v. Kern, supra.

■ Appellants' contention that, on account of appellee's laches, their plea of stale demand ought to prevail, cannot be sustained. The record reveals that the ward became of age April 29, 1925, and that this suit was filed August 22, 1931; that she is highly educated, taught school for several years, and is capable of knowing her rights. Upon attaining her majority, she began making demand of her guardian for settlement of her estate, engaging an attorney to write him for adjustment of her affairs, and secured from him promises of settlement. She took no legal

steps against her guardian to enforce her demands until the institution of this suit. S. J. Massie testified: "I am sure he (J. W. Ashley, guardian) was solvent and able to pay his obligation at that time (April, 1926), now he is broke; since this case was brought about he was running a grocer store and they closed him up and forced him into bankruptcy, and he is a bankrupt now, and this condition of insolvency has existed since this suit was filed."

■ It may be conceded that the facts thus disclosed by the record are sufficient to raise the issue of appellants' plea of stale demand, due to appellee's delay in instituting suit to compel her guardian to make an accounting at a time when he could have responded, rather than to delay until he became insolvent, thereby causing the full weight of his default to fall on his sureties. As denominated by authorities of this and other jurisdictions, the sureties may be classed as favorites of the law, and their rights jealously protected; yet the rights of the minor ward, where defalcation on the part of her guardian has occurred, should be guarded with extreme zealousness. As stated above, the sureties obligated themselves to the faithful performance of the duties of their principal to manage the ward's estate, and to make final report to and settlement with his ward when the ward became of age; the principal breached that duty, and it is incumbent upon his sureties to respond to the condition of the bond. State v. Branch, 151 Mo. 622, 52 S. W. 390.

■■ Under article 4296, when a ward arrives at 21 years of age, it is the duty of the guardian to immediately settle and close the estate and be discharged. The guardian is not entitled to an absolute discharge of his trust until he has submitted his final accounting or settlement to the court, and it is within the power of the probate court to inquire into and determine whether the same as rendered be fair, just, and correct. The fact that the ward has reached her majority, in the instant case, does not deprive the probate court of its jurisdiction over the guardian to compel and enforce an accounting of his guardianship. Our guardianship statutes do not undertake to limit the length of time, after a ward becomes of age, that the court shall have power and control over the guardian as to the settlement of such account. Neither does it provide that, where a guardian has failed in his duty to file such accounting immediately upon the ward arriving at the age of 21 years, the lapse of any given period of time thereafter furnishes a bar to the enforcement of an accounting by the probate court. In the absence of express provisions of law, restricting the time when the probate court can exercise its power to inquire into and investigate the transactions of the guardian, we hold that the court exercised

its power within the time shown by the facts in this case, and that appellants' plea of "stale demand" cannot be maintained.

Article 5528, R. S. 1925, provides that a suit on the bond of the guardian may be commenced and prosecuted within four years next after the removal or discharge of the guardian. Appellee's cause of action falling clearly within the period of limitation provided for such action, the equitable plea of stale demand is not available. In jurisdictions where law and equity are administered in separate forums, the general rule is that courts of equity will be governed by the same rules of limitation that prevail in analogous actions at law. Under our blended system, the same court administering both law and equity, our statutes of limitation are equally applicable, whether the relief sought be legal or equitable.

In the case of Chamberlain v. Boon, 74 Tex. 663, 12 S. W. 727, 729, the Supreme Court held: "With this change of the law [limitation defenses] comes also the requirement that instead of answering the plea with the assertion of such excuses for delay as would heretofore have been held by the courts of equity a sufficient replication to the defense of stale demand, the reply must now be confined to a statement of the causes that are mentioned in the statutes as suspending the running of limitation, and such other matters as have been held applicable to the defense of limitation."

In the case of Whitfield v. Burrell, 54 Tex. Civ. App. 567, 118 S. W. 153, 157, in which a writ of error was denied, the ward became of age August 24, 1902, the guardian was discharged by order of the probate court May 27, 1907, four years and nine months after the ward became 21 years of age. The court held that the demand for settlement in the probate court being neither a suit or action, the two years' statute of limitation, nor the four years' statute of limitation, as pleaded by the guardian, was available; thus the probate court, having jurisdiction over the guardianship, was authorized to enter the order discharging the guardian and decreeing the amount due. The four-year period on the stated legal demand thus found by the probate court only began to run on the date the order, discharging the guardian, was entered. Therefore the legal defense of limitation is not available.

The probate court, in establishing the legal demand due by the guardian to his ward, did not have such jurisdiction of the sureties as to adjust the equities between the two sets of bondsmen. The sureties were not parties to that proceeding; thus the order made by said court, attempting to establish the amount due by each, was necessarily void ab initio. This action became necessary, not only to recover the amount due, but to adjust the equities and make certain the amount due on the bonds. The guardian's general bond obligated the principal to a faithful administration of his trust, and the sureties thereon became liable for a breach of the covenants in reference to the estate to which their principal took possession by virtue of his appointment. The purpose of such bond was to protect the estate, commensurate with the liabilities of the guardian, based upon the general duties imposed upon him by statute. The sale of real estate is not one of these duties. The duty to sell real estate is contingent and special in nature, and for the performance of that duty the statute imposes the posting of a special bond, and the sureties thereon become specially obligated to the faithful performance by their principal of the special trust; that is, to protect the estate in the sale of the real property.

The amount of the established devastavit being of such indefinite character, and so uncertain in its nature as to the administrator of the deceased surety, W. H. Mathews, the language of the statute (article 3530) requiring a presentation of claims for money against a testator or intestate to his representative, is not so restricted as to include such indefinite and uncertain claims as are not susceptible of verification by affidavit. "It has been held that a contingent claim, or one for an uncertain or unliquidated amount of damages, should not be presented to the representative for allowance. Such claim is one which requires the intervention of a court for the purpose of ascertaining the amount due, even though such amount is capable of computation by proof made in the ordinary way." 14 Tex. Jur. p. 31.

The judgment of the district court made certain and definite the amount due by the administrator's estate, to which no assignment is made, and directed its payment in due course of administration. We conclude that the findings of the court, and the judgment anent thereto, on all phases of this appeal, are fully supported by the pleadings and declared by the evidence.

In view of the conclusion reached, the judgment of the district court is affirmed.

Affirmed.