Joe Sidney **MAEBERRY**, Appellant,

v.

James Lee **GAYLE**, Appellee.

No. 13–96–052–CV.

Court of Appeals of Texas, Corpus Christi.

Sept. 11, 1997.

Gilberto Hinojosa, Magallanes, Sokat & Hinojosa, Brownsville, for Appellant.

Thomas Sullivan, Carinhas, Chosy & Sullivan, L.L.P., Brownsville, for Appellee.

Before the court en banc.[1]

## OPINION

CHAVEZ, Justice.

Appellee James Lee Gayle won a judgment in a bench trial against appellant Joe Sidney Maeberry based on fraud and breach of fiduciary duty. Gayle was awarded actual damages of $33,800, exemplary damages of $45,000, and attorneys fees of $10,000, and Maeberry was granted a credit of $26,000 toward the judgment against him. We affirm Gayle's award based on fraud and the award of attorney's fees, reverse and render judgment that Gayle take nothing on his claim for breach of fiduciary duty, and remand to the trial court for further action on the issue of exemplary damages.

James Lee Gayle spent most of his childhood with his grandparents, since he never knew his father and saw his mother only rarely. Gayle's grandmother died when he

was twelve or thirteen, and his grandfather, Willie Lee Wilson, died in January of 1980 when Gayle was fifteen years old. Wilson's will left his house and lot, furniture, two cars, and the proceeds of any insurance policies payable to his estate to Joe Sidney Maeberry as trustee, to be held for the benefit of Gayle until Gayle became eighteen years old. Maeberry, Gayle's uncle and closest remaining relative, was also appointed as Gayle's guardian.

Maeberry never transferred ownership of any of Wilson's property to Gayle, but rather assumed ownership himself. On May 18, 1983, approximately six months after Gayle's eighteenth birthday, Maeberry took Gayle to a lawyer's office where Gayle executed a deed transferring ownership of the house to Maeberry for consideration of $10.[2] Maeberry testified that Gayle told him that he was glad to transfer the house to Maeberry because he was appreciative of how Maeberry had taken care of him. Gayle testified that Maeberry told him that he was signing legal papers related to the guardianship, not a sale of the house. Gayle testified that Maeberry never told him that he had been the beneficiary of Wilson's will, and that he only discovered that he was the beneficiary when he conducted his own inquiry in 1993.

Maeberry's first point of error in his appeal of the judgment against him alleges legally or factually insufficient evidence to support the court's finding that appellant breached his fiduciary duty "as the guardian of the estate of the appellee." The second point complains of legally or factually insufficient evidence to support the court's finding that the conveyance of the house from Gayle to Maeberry was accomplished by fraud and fraudulent misrepresentations, and the third point alleges legally and factually insufficient evidence to support recission of that conveyance. The fourth and fifth points allege legally and factually insufficient evidence to support the court's finding that the fair market rent of the house was $2400 per year, and

1. Retired Justice Noah Kennedy assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988); Tex R.App. P. 79(d).

2. The record reflects that a search was conducted in the official records by the Cameron County clerk which failed to uncover a deed transferring the house to Gayle as the beneficiary of Wilson's estate. The only deed found reflects the transfer from Gayle to Maeberry.

878

legally and factually insufficient evidence for the court's subsequent award of $28,800 for fair rental value. The sixth point alleges legally and factually insufficient evidence to support the court's finding that appellant received and retained life insurance proceeds of $5000, which rightfully belonged to appellee. The seventh and eighth points of error challenge the legal and factual sufficiency of the evidence supporting the court's award of exemplary damages of $45,000 and attorney's fees of $10,000. The ninth point of error argues that the court erred by implicitly finding that appellee's cause of action was not barred by various limitations statutes.

When reviewing challenges to the legal sufficiency of the evidence, we consider only the evidence and inferences from the record that support the fact finder's determinations. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993); *Cantu v. Butron,* 921 S.W.2d 344, 348 (Tex.App.—Corpus Christi 1996, writ denied). We overrule such points if the findings are supported by more than a scintilla of evidence. *See Browning–Ferris,* 865 S.W.2d at 928, *Cantu,* 921 S.W.2d at 348. In contrast, factual sufficiency challenges require that we consider and balance all the evidence. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989); *Cantu,* 921 S.W.2d at 348. We overrule factual insufficiency points of error unless the evidence supporting a finding is so weak that the finding is against the great weight and preponderance of the evidence and clearly wrong and unjust. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996).

Maeberry first argues that he could not have breached a fiduciary duty as guardian of Gayle's estate in the transfer of the house.[3] Maeberry argues that there was no longer a guardianship or trust relationship between them at the time of the conveyance

because Gayle was over eighteen years old. We agree. Section 745 of the Texas Probate Code plainly states "the estate of the ward is settled and closed when: (1) a minor ward dies or becomes an adult by becoming eighteen years of a age, or by removal of disabilities of minority in accordance with the laws of this state." The dissent notes that this section does not state that the guardianship terminates without further action when the ward attains majority. However, if the effect of a statute is conditioned on some further action, one should expect the statute to indicate the further action necessary. As section 745 does not indicate any further action required for the termination of the guardianship, we hold that the estate of a ward terminates when a minor ward becomes an adult by becoming eighteen years of age.

This holding is consistent with our opinion in *Home Indemnity Company v. Mosqueda,* 464 S.W.2d 902 (Tex.Civ.App.—Corpus Christi), *rev'd on other grounds,* 473 S.W.2d 456 (Tex.1971). In that case, a life insurance company argued that it was unable to pay policy proceeds to the beneficiary because it was waiting for a guardian to be appointed for the beneficiary, but no guardian was ever named. We held that regardless of whether a guardian was appointed, payment should have been made directly to the beneficiary when he attained majority status, because "[a] guardianship of a minor terminates when the ward becomes an adult." *Id.* at 906. This statement was not qualified by any reference to a final account by the appointed guardian. *Id.*

It is true that the guardian has an ongoing duty to make a final account of the guardianship under section 749 of the Probate Code even after the ward attains majority status. *Massie v. De Shields,* 62 S.W.2d

3. The court made an oral finding that Maeberry breached a fiduciary duty to Gayle both as guardian of his estate and based on a "close and confidential relationship." *See, e.g., Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 594 (Tex.1992) (fiduciary duty may arise from close and confidential relationship when one person trusts and relies on another, whether relationship is moral, social, domestic, or personal). The court's written findings contained only a finding of a breach of fiduciary duty as guardian of Gayle's estate, not a finding of a breach of fiduciary duty based on a close and confidential relationship. The court's written findings of fact control over its oral findings. *Rodriguez v. Rodriguez,* 834 S.W.2d 369, 373 (Tex.App.—San Antonio 1992), *rev'd on other grounds,* 860 S.W.2d 414 (Tex.1993). Therefore we will review only the sufficiency of the evidence supporting the breach of a fiduciary duty as guardian of Gayle's estate.

322, 324 (Tex.Civ.App.—Dallas 1933, writ ref'd); *Pure Oil Co. v. Clark,* 37 S.W.2d 1088, 1090 (Tex.Civ.App.—Texarkana 1931, writ ref'd). Obviously the duty to account must continue past the date the ward attains majority status, since, by nature, a "final" account of a guardianship can not be made until after the guardianship ends. The failure of a guardian to make a final account does not mean that the guardian retains a fiduciary duty that continues indefinitely as the former ward progresses through adulthood. No other rights or duties of a guardian continue after the ward attains majority age.[4]

The Probate Code also provides that "if a guardian charged with the duty of filing a final account or report fails or neglects so to do at the proper time, the court may, ... on the written complaint of the *emancipated* ward, ... cause the guardian to be cited to appear and present the account." (emphasis added). TEX. PROB.CODE ANN. § 750(a) (Vernon Supp.1997). The use of the phrase "emancipated ward" in the statute indicates that the guardianship relationship terminates at the proper time even without a final account. Only the duty to make an account continues; all other aspects of the guardianship end once the minor attains majority age.

■ We hold that because Gayle was over eighteen years of age at the time of the conveyance, Maeberry no longer had a fiduciary duty as Gayle's guardian. Similarly, Maeberry was no longer the trustee of Wilson's estate for the benefit of Gayle, since the instrument designing the trust specified that the trust would terminate when Gayle became eighteen. Since neither of these relationships was still in place at the time of the conveyance, no fiduciary duty existed based on Maeberry's status as either a trustee or guardian.

The court's finding of a breach of fiduciary duty was also referable to a finding challenged by appellant's sixth point of error, that "the Defendant, in his capacity as guardian of the estate of the Plaintiff, received life insurance proceeds in the sum of $5000.00

belonging to the Plaintiff and that the Defendant failed and did not account to the Plaintiff or the Probate Court for these life insurance proceeds." Maeberry testified that he never received the life insurance benefits and did not know what became of the money. Gayle countered by submitting into evidence Maeberry's application to serve as Gayle's guardian, wherein Maeberry indicated that $5000 in life insurance benefits were included in Gayle's estate. Gayle also testified that he was "pretty sure" his grandfather had a life insurance policy, because he remembered a man regularly coming to the house to pick up the premiums. However, after some confusion, Gayle acknowledged that he did not know how much money the policy was worth. Although the guardianship application is some evidence that Maeberry believed Gayle was entitled to $5000 in life insurance benefits, it is not evidence that Maeberry ever received any benefits. No copy of the insurance policy or any correspondence from the insurance company was offered into evidence, nor were any other records or other evidence introduced to indicate that Maeberry ever received $5000 on behalf of Gayle.

The dissent argues that Maeberry may have been liable for negligently failing to recover the insurance proceeds for Gayle, in contravention of his duties to Gayle under section 772 of the Probate Code, which provides:

> Every guardian of an estate shall use ordinary diligence to collect all claims and debts due the ward and to recover possession of all property of the ward to which the ward has claim or title, if there is a reasonable prospect of collecting the claims or of recovering the property. If the guardian wilfully neglects to use ordinary diligence, the guardian and the sureties on the guardian's bond shall be liable, at the suit of any person interested in the estate, for the use of the estate, for the amount of the claims or for the value of the property that has been lost due to the guardian's neglect.

TEX. PROB.CODE ANN. (Vernon Supp.1997).

■ However, Gayle did not allege a cause of action based on section 772 of the

---

**4.** For example, after the ward attains majority age, the guardian loses authority to act on behalf of the ward, whether the court entered an order to that effect or not. *Longoria v. Alamia,* 149 Tex. 234, 230 S.W.2d 1022, 1023 (1950); *Tharp v. Blackwell,* 570 S.W.2d 154, 160 (Tex.Civ. App.—Texarkana, 1978, no writ).

Probate Code. A judgment may not be based upon a cause of action not stated in the pleadings. *Moreno v. Moore,* 897 S.W.2d 439, 442 (Tex.App.—Corpus Christi 1995, no writ). Gayle did not allege a breach of fiduciary duty in failing to *recover* the proceeds; he alleged only that Maeberry's *retention* of various property belonging to Gayle, including any life insurance proceeds, constituted a breach of fiduciary duty.

The dissent refers to the language in section 772 stating that the guardian shall be liable "for the use of the estate" an "for the value of the property." However, this language only provides a measure of damages. The guardian's *liability* is still premised on neglecting to use ordinary diligence to collect all claims and debts due the ward. There is nothing in Gayle's pleading which addresses Maeberry's negligent failure to collect the insurance proceeds.

■■■ Before Gayle could recover from Maeberry for breach of fiduciary duty pertaining to insurance proceeds, he needed either to prove that Maeberry received insurance proceeds or to assert a cause of action for neglecting to collect them. We hold Gayle cannot recover damages to compensate for lost insurance proceeds because there is no evidence to prove that Maeberry ever received the insurance proceeds, and no cause of action is stated in Gayle's pleadings for failure to recover the proceeds. Appellant's first and sixth points of error are sustained.

■■■ Appellant's second point of error alleges factually and legally insufficient evidence to support the court's finding that Maeberry secured the deed to the house from Gayle by means of fraud. The elements of fraud are a material representation, which was false and was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury. *Sears, Roebuck & Co. v. Meadows,* 877 S.W.2d 281, 282 (Tex.1994).

Maeberry was essentially the only remaining family that Gayle had. At the time of the conveyance, Maeberry had only recently ceased to serve as Gayle's guardian and

trustee of the estate Gayle was to inherit. Gayle and Maeberry went together to the office of attorney Ricardo Garcia, where Ricardo Garcia's brother, notary public Ronaldo Garcia, witnessed them signing the deed. Gayle testified that Maeberry had told him "[c]ome on, boy. Let's go to the lawyer's office to sign some guardianship papers." Gayle testified that no one explained the documents to him, and he did not know what he was signing, aside from Maeberry telling him that they were guardianship papers. Gayle submitted documents to the court showing that his reading ability before dropping out of school had been poor, and he testified that he had been unable to attain a Graduate Equivalency Degree because of his poor reading. Gayle testified that he was rushed when signing the deed, and that he never received the $10 mentioned in the deed as the purchase price. Evidence presented in this case established the actual market value of the house at $19,000.

Maeberry and Ronaldo Garcia testified that Ricardo Garcia did explain to Gayle before he signed that the document was a deed to the house, and that the document would effectuate a conveyance of the house from Gayle to Maeberry. Gayle signed without reading the document. Maeberry testified that Gayle sold him the house for only ten dollars out of appreciation for all that Maeberry had done for him. However, this testimony was undermined by Gayle's testimony that, rather than treating his nephew in a way that would have made him appreciative, Maeberry would get drunk and pick on Gayle and eventually ejected him from the house, leaving him to live on the streets.

■■■ When confronted with conflicting testimony, we defer to the determination of the trial judge, who is the sole judge of the credibility of the witnesses in bench trials. *Griffin Indus., Inc. v. Honorable Thirteenth Court of Appeals,* 934 S.W.2d 349, 355 (Tex.1996); *Hironymous v. Allison,* 893 S.W.2d 578, 583 (Tex.App.—Corpus Christi 1994, writ denied); *Welborn Mortg. Corp. v. Knowles,* 851 S.W.2d 328, 332 (Tex.App.—Dallas 1993, writ denied). In this case, the trial court was free to believe Gayle's testimony that all anyone told him about the

document was Maeberry's instruction to come and sign "guardianship papers" and disbelieve Maeberry's and Garcia's testimony to the contrary. Therefore, we hold that there was legally and factually sufficient evidence that Maeberry obtained the deed by making a false, material statement to Gayle, which was intended for Gayle to rely on and which Gayle did rely on to his detriment. Appellant's second point of error is overruled.

 Maeberry's third point of error arguing that there is insufficient evidence to support the court's judgment for recission of the deed was premised on its argument of insufficient evidence of either fraud or breach of fiduciary duty. Having held that the court's finding of fraud was supported by adequate evidence, we hold that the court did not err in ordering recission of the deed and overrule appellant's third point of error.

 Maeberry's fourth and fifth points of error argue that there is insufficient evidence to support the court's judgment for damages of $28,800 for fair rental value on the house. A local real estate agent, Henry Rivas, testified that the house, in its present condition at the time of trial, would have a rental value of $200 per month.[5] He also explained that "this type of property always holds its value pretty steady." He testified that rental values likewise "have stayed level." Maeberry did not counter with any testimony, expert or otherwise, estimating the rental value of the house. Maeberry only argues that the condition of the house at the time of trial reflected several repairs and improvements that he had made to the house, implying that the house must have had a lesser rental value before the improvements were made. Rivas refused to testify that the work done by Maeberry had added any value to the house, stating rather that the repairs "just prolonged the life expectancy of the house" and were necessary "to keep it where it would be livable." Rivas also gave other testimony suggesting that the value of the house could not have been significantly lower at any stage during Maeberry's occupancy when he explained his overall valuation of the house at $19,000 with the comment "if it's got a roof over it, to say $19,000 is not much money."

Maeberry also argues that Rivas's $200 per month estimate of the rental value at the time of trial necessarily included apartments that Maeberry had constructed elsewhere on the property, which the court found to have a value of $26,000.[6] However, Rivas's estimate of $200 was for the "original house" only. He gave other testimony that put the total rental value of the property, including the original house and the apartments Maeberry built, at $800 per month. We hold that the court's finding that $28,800 was the fair rental value of the house was supported by more than a scintilla of evidence and was not so against the weight of the evidence as to be clearly wrong and unjust. Maeberry's fourth and fifth points of error are overruled.

In his seventh and eighth points of error, appellant challenges the legal and factual sufficiency of the evidence supporting the court's award of $45,000 in exemplary damages and $10,000 in attorneys fees. Appellant's only argument under these points is that, since the court did not specify how much of the exemplary damages and attorneys fees were attributable to Gayle's fraud claim and how much were attributable to his breach of fiduciary duty claim, if we reverse either ground of recovery then we must remand the exemplary damages and attorneys fees issues for the trial court to indicate how much of these awards is attributable to each claim.

 Attorneys fees may be awarded for fraud in real estate transactions, TEX. BUS. & COM.CODE ANN. § 27.01(e) (Vernon 1987), but not for breach of fiduciary duty. See, e.g., Cantu v. Butron, 921 S.W.2d 344, 352 (Tex.App.—Corpus Christi 1996, writ denied) (expense of attorney's fees may be considered with exemplary damages award for

---

5. The court arrived at its $28,800 figure by multiplying the $200 per month figure provided by Rivas by the twelve years Maeberry lived in the house after Wilson's death.

6. Maeberry constructed two apartments on the property, and was given a credit of $26,000 toward the judgment against him to reflect the value the apartments he had added to the property.

breach of fiduciary duty since no separate award of attorneys fees is available). There is no need to remand the award of attorneys fees, since attorneys fees could only have been awarded for the fraud claim. Appellant's eighth point of error is overruled.

 A party is entitled to exemplary damages if he prevails on claims for either fraud, *Coronado Transmission Co. v. O'Shea,* 703 S.W.2d 731, 732 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.), or breach of fiduciary duty. *International Bankers Life Ins. v. Holloway,* 368 S.W.2d 567, 584 (Tex. 1963). We agree with appellant that the exemplary damages award must be remanded to the trial court so the court may indicate how much of its award is assignable to the fraud claim, which we affirm, and how much is applicable to the breach of fiduciary duty claim, on which we have reversed and rendered judgment that the plaintiff take nothing. Appellant's seventh point of error is sustained.

 Appellant's ninth point of error argues that the court erred in holding that limitations did not bar Gayle's claims against Maeberry. Appellant argues that three limitations statutes in the Civil Practice and Remedies Code bar appellee's claims, section 16.024, the three year limitations statute for adverse possession, section 16.025, the five year limitations statute for adverse possession, and section 16.051, the ten year residual limitations statute. However, when a party asserting adverse possession has used fraud to obtain the deed to the property, the fraud prevents the running of the limitations statutes. *Burrow v. McMahan,* 384 S.W.2d 124, 127 (Tex.1964); *Glenn v. Steele,* 141 Tex. 565, 61 S.W.2d 810, (1933); *Neal v. Pickett,* 280 S.W. 748, 752 (Tex.Comm'n App.1926, holding approved); *Gibson v. Burkhart,* 650 S.W.2d 185, 188 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.); *Cartwright v. Minton,* 318 S.W.2d 449, 454 (Tex.App.—Eastland 1958, writ ref'd n.r.e.); *Barrera v. Ruiz,* 308 S.W.2d 578, 580 (Tex.Civ.App.—Fort Worth 1957, no writ). We overrule appellant's ninth point of error.

We AFFIRM the judgment awarding Gayle the house, attorney's fees, and actual damages representing the rental value of the house, minus Maeberry's credit for his improvements to the property, based on his fraud claim; we REVERSE and RENDER judgment that appellee take nothing on the claim for breach of fiduciary duty for which the trial court awarded $5000; and REMAND the issue of exemplary damages to the trial court so that it may assign appropriate portions of its initial award between appellee's fraud claim and his claim for breach of fiduciary duty.

Dissenting opinion by RODRIGUEZ, J.

SEERDEN, C.J., and DORSEY, J., join in the dissent.

RODRIGUEZ, Justice, dissenting.

I dissent from the majority's disposition of points of error number one and six.

The crux of Maeberry's first point of error is that he could not have breached a fiduciary duty as guardian of Gayle's estate in the transfer of the house because, at the time of the transfer, Gayle was over eighteen years old and there was no longer a guardianship or trust relationship between them.

In sustaining this point of error, the majority confuses the termination of the estate with the termination of a guardian's fiduciary duty to not harm his ward. The majority presumes that Maeberry's obligations to Gayle vaporized the minute Gayle turned eighteen. To support this presumption, the majority cites to *Tharp v. Blackwell,* 570 S.W.2d 154, 160 (Tex.Civ.App.—Texarkana 1978, no writ), and *Longoria v. Alamia,* 149 Tex. 234, 230 S.W.2d 1022, 1023 (1950), which hold that after the ward attains majority age, the guardian loses authority *to act on behalf of* the ward. While I do not question this holding, it has no application to the facts before us. Gayle did not complain Maeberry took some action *on his behalf* after he turned 18; rather Gayle complained of the manner in which Maeberry acted *toward him* after he attained majority and before the estate was closed.[1]

---

1. The majority's reliance on *Tharp* is further mis-

placed because in that case, the ward had at-

Attainment of majority only acts to terminate the authority of the guardian *to act on behalf of* the ward. It does not terminate the duty of the guardian to refrain from taking action adverse to the interest of the ward, or to continue to act in a fiduciary capacity toward the ward. *See* TEX. PROBATE CODE ANN. § 694(a) (Vernon Supp.1997) ("Unless otherwise discharged as provided by law, a guardian remains in office until the estate is closed."). A guardian's fiduciary duty does not terminate until he is discharged by the court.

Neither should the majority rely on § 745 of the probate code, which provides that "the estate of the ward is settled and closed when: (1) a minor ward dies or becomes an adult by becoming 18 years of age, or by removal of disabilities of minority according to the law of this state." TEX. PROB.CODE ANN. § 745(a)(1) (Vernon Supp.1997). Section 745 merely provides a mechanism for determining when a guardianship may be closed and settled. While I agree with the majority's holding that, "[T]he estate of a ward terminates when a minor ward become an adult by becoming eighteen years of age," that holding does not address the issue presented to the Court, that being, "Does the guardian of an estate have a continuing fiduciary duty to his ward until discharged by the Court?" In direct contravention of § 694(a) of the probate code, the majority answers this question in the negative.

The majority argues that use of the phrase "emancipated ward" in § 750(a), which delineates who may sue for an accounting of the estate, indicates the guardianship terminates at "the proper time even without a final account." This interpretation of § 750(a) fails to consider the unambiguous language of § 694(a) that a guardian remains in office until the estate is closed.

Neither § 745 nor § 750 provide that the guardianship terminates or is closed without further action when the ward attains majority. To the contrary, the probate code requires that an accounting be had and the proceeds of the estate, if any, be distributed to the ward or to the ward's personal representative. An accounting is not merely a

ministerial act. Only when an accounting has been made may the guardian of the estate be discharged and his fiduciary responsibility to the ward ended:

> When the guardian of an estate has fully administered the estate in accordance with this chapter and the orders of the court and the guardian's final account has been approved, and the guardian has delivered all of the estate remaining in the guardian's hands to any person entitled to receive the estate, the court shall enter an order *discharging the guardian from the guardian's trust, and declaring the estate closed.*

TEX. PROB.CODE ANN. § 752(d) (Vernon Supp. 1997) (emphasis added); *see also Massie v. De Shields,* 62 S.W.2d 322, 324 (Tex.Civ. App.—Dallas 1933, writ ref'd) (a "guardian is not entitled to absolute discharge of his trust until he has submitted his final accounting or settlement to the court ..."). Until Maeberry was discharged from the guardian's trust and the probate court declared the estate closed, Maeberry was required to act in a fiduciary capacity toward Gayle. Having failed to render an accounting or obtain a discharge from the probate court, Maeberry was still acting in a fiduciary capacity toward Gayle at the time Maeberry defrauded Gayle of his property.

I would find the evidence sufficient to support the trial court's findings of fact regarding breach of a fiduciary duty with respect to the guardianship of Gayle's estate and overrule the first point of error.

I would also overrule point of error number six in which Maeberry challenges the sufficiency of the evidence to support the finding that "the Defendant, in his capacity as guardian of the estate of the Plaintiff, received life insurance proceeds in the sum of $5000 belonging to the Plaintiff and that the Defendant failed and did not account to the Plaintiff or the Probate Court for these life insurance proceeds."

Maeberry testified he never received the life insurance benefits and did not know what became of the money. Gayle countered by

tained the age of majority and requested that the estate be closed and the assets distributed to her.

submitting into evidence Maeberry's application to serve as Gayle's guardian, in which Maeberry claimed the existence of the life insurance policy necessitated a guardianship of Gayle's estate.

I would hold that Maeberry's application for guardianship of Gayle's estate is some evidence that Maeberry received the $5000 life insurance benefit. The application for guardianship stated: "The Estate of said minor consists of the following property: a $5,000 life insurance policy on the life of Willie Lee Wilson, payable to James Lee Gayle as Beneficiary." Maeberry also stated that "[a] Guardian is required in order to recover the insurance proceeds from the aforementioned insurance policy." From these statements, I would hold we can presume Maeberry collected on the policy.

In addition, at the time of his appointment, Maeberry swore an oath that he would "faithfully discharge the duties of Guardian of the person and estate of James Lee Gayle, a minor, according to law." The probate code provides that:

> Every guardian of an estate shall use ordinary diligence to collect all claims and debts due the ward and to recover possession of all property of the ward to which the ward has claim or title, if there is a reasonable prospect of collecting the claims or of recovering the property. If the guardian wilfully neglects to use ordinary diligence, the guardian and the sureties on the guardian's bond shall be liable, at the suit of any person interested in the estate, for the use of the estate, for the amount of the claims or for the value of the property that has been lost due to the guardian's neglect.

TEX. PROB.CODE ANN. § 772 (Vernon Supp. 1997).

According to Maeberry, Gayle needed a guardian to secure the proceeds of Wilson's life insurance policy. Maeberry swore under oath to the probate court that he would carry out his duties as a guardian. One of those duties was to claim and recover the proceeds from the life insurance policy. Therefore, even were Maeberry correct in asserting there is no evidence to support a finding he collected on the policy, he would still be liable to Gayle for the amount of the policy because Maeberry would have been negligent under § 772 for not claiming the proceeds and turning them over to Gayle.

The majority is critical of this analysis, stating Gayle did not assert a cause of action based on § 772. I disagree. In his original petition, Gayle listed the property that he was claiming under Wilson's will. Specifically listed was "any insurance policy which is payable to the estate of Willie Lee Wilson or James Lee Gayle." Under each of the three causes of action asserted, Gayle plead for the "loss of use of all personal property" and "the fair market value of all personal property." The quoted portions of the pleading track the language of § 722 that the guardian shall be liable for "the use of the estate" or "for the value of the property." As we are required to construe pleadings liberally, TEX.R. CIV. P. 1, I would hold that Gayle's failure to explicitly cite § 772 does not prevent him from asserting a cause of action under that section of the probate code.

Dissenting opinion joined by SEERDEN, C.J., and DORSEY, J.