NUMBER 13-99-430-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


____________________________________________________________________


TERRY RAY CONSTRUCTION, INC., Appellant,


v.



CENCO CORPORATION, D/B/A CENTRAL

PLUMBING & ELECTRIC SUPPLY CO., Appellee.

____________________________________________________________________


On appeal from the County Court at Law Number 1


of Hidalgo County, Texas.


____________________________________________________________________


O P I N I O N



Before Justices Hinojosa, Yañez, and Chavez(1)


Opinion by Justice Hinojosa



 Appellee, Cenco Corporation d/b/a Central Plumbing & Electric
Supply Co., filed a sworn account suit against appellant, Terry Ray
Construction, Inc. Appellant filed a counterclaim alleging that: (1) the
parties had an agreement that Cenco would not charge more than
$45,600 for plumbing supplies and (2) interest charged by Cenco was
usurious. After a bench trial, the trial court denied appellant's
counterclaim and granted a judgment in favor of appellee. By two
issues, appellant contends the evidence is legally and factually
insufficient to support the trial court's failure to find Cenco's interest
charges usurious and failure to enforce the agreement between the
parties.

A. Factual and Procedural History


 The undisputed facts are that in 1995, appellant was awarded a
contract for construction work at two schools in Brownsville. The
project was referred to as the Stell and Faulk kitchen additions. 
Appellant subcontracted with RC Plumbing ("RC") to perform the
plumbing work on the project. RC contracted with Cenco to supply all
the plumbing fixtures necessary for the project. As work progressed,
Cenco had problems getting RC to timely pay for the materials it
supplied. In order to facilitate payments to Cenco, and to insure there
would be no materialman's lien(2) on the finished project, Terry Ray,
appellant's president, drafted a joint check agreement. The agreement
was between appellant, RC and Cenco, was printed on appellant's
letterhead, and stated:




December 20, 1995


Supplier: Central Plumbing & Electric Supply
Company

 315 Southwest

 Harlingen, TX 78550


Central Plumbing & Electric Supply Company is
selling to R. C. Plumbing Company materials to
be incorporated into the Stell and Faulk Kitchen
Additions located in Brownsville, Texas.


The overall value of all materials and fixtures is
$45,600 including materials previously
incorporated and paid for with Checks #28540,
28230 & 28388 totaling $23,344.38.


R.C. Plumbing agrees that in consideration for
Central Plumbing & Electric furnishing materials
for the referenced project, checks to be issued
under this contract will be paid jointly to R. C.
Plumbing and Central Plumbing & Electric Supply
Company.


In order to expedite payment, Terry Ray
Construction, Inc. must receive, on or before the
25th day of each month, copies of invoices or
statements showing the value of materials
supplied by Central Plumbing & Electric, on the
above referenced project.


Nothing in this agreement shall be construed to
make Terry Ray Construction, Inc. a party to any
contract, purchase order, or any other agreement
between R.C. Plumbing and Central Plumbing &
Electric Supply Company, nor to infer
responsibility for the whole or partial performance
thereof. By agreeing to this joint check
agreement, Central Plumbing & Electric Supply
Company agrees to provide all materials
necessary for the above referenced project.


Accepted by: Subcontractor

[signed by Robert Camacho for R.C. Plumbing]


Accepted by: Supplier

[signed by Paul Pena for Cenco]


Accepted by: Terry Ray Construction, Inc.

[signed by Terry Ray, President]


 In February, RC filed for bankruptcy and walked off the job. 
Wanting to complete the Stell and Faulk project on time, Ray contacted
Cenco about supplying the remaining materials for the job. Cenco then
delivered a large shipment of materials directly to appellant. On March
20, 1996, Terry Ray, on behalf of appellant, filled out a credit application
and submitted it to Cenco. That same day, Cenco approved the
application and granted appellant a credit line of $17,000. The
following day, appellant issued a joint check in the amount of $5,071.41
to Cenco and RC for the balance RC owed Cenco. Cenco then supplied
the materials that appellant needed to complete the project and charged
them to appellant's account.

 After Cenco delivered all the materials appellant needed, the
balance on appellant's account was $15,342.54. Cenco demanded
payment, but appellant refused to pay the entire amount. Appellant
asserted Cenco was limited to the $45,600 amount set out in the joint
check agreement. Appellant later offered a check made out jointly to
Cenco and RC in the amount of $10,606.67 ($45,600 minus prior
payments for materials), conditioned upon Cenco's release of all liens. 
Cenco refused the offer and filed suit against appellant.

 Appellant then filed a counterclaim claiming that the joint check
agreement constituted a binding contract between Cenco and appellant
that Cenco would not charge more than $45,600 for the plumbing
materials it had agreed to supply for the Stell and Faulk project. 
Appellant also claimed that the interest charged by Cenco was
usurious.

 After a bench trial, the court rendered judgment for Cenco in the
amount of $15,342.54, pre-judgment interest at the rate of six percent
per annum, attorney's fees, court costs and post-judgment interest. 
The court denied all relief requested by appellant in its counterclaim. 
Appellant then filed this appeal.

B. Findings of Fact and Conclusions of Law


 The trial court made the following findings of fact:

(1) on December 20, 1995, appellant, RC and Cenco entered into a
joint check agreement;


(2) on March 20, 1996, after RC stopped work on the project,
appellant entered into an agreement with Cenco regarding the
purchase of the remaining materials;


(3) on March 21, 1996, appellant paid $5,071.41 pursuant to the joint
check agreement for materials previously delivered;


(4) appellant and Cenco agreed in writing that appellant would incur
a finance charge at the rate of 1.5% per month on invoices unpaid
after the 10th day of the month following the prior month's billing;


(5) Cenco delivered the remaining materials to appellant;


(6) the reasonable market value of those materials was $15,342.54;


(7) appellant's account became past due;


(8) Cenco made written demand for payment of the $15,342.54 thirty
days before filing suit;


(9) appellant did not pay the demanded amount;


(10) appellant conditionally offered $10,606.07 to Cenco in settlement
for Cenco's claim; and


(11) $32,000 is a reasonable attorney's fee.


 The trial court made the following conclusions of law:


(1) appellant is indebted to Cenco in the sum of $15,342.54 for
plumbing supplies;


(2) appellant is indebted to Cenco for the sum of $2,453.97 as pre-judgment interest in the indebtedness from June 25, 1996 to
February 23, 1999 at the rate of six percent per annum;


(3) appellant's offer of $10,606.87 was not an unconditional tender;


(4) Cenco did not charge a usurious rate of interest on the past due
account; and


(5) reasonable attorney's fees for legal services rendered are $32,000. 


C. Standard of Review


 Findings of fact in a case tried to the bench have the same force
and dignity as a jury's verdict. Anderson v. City of Seven Points, 806
S.W.2d 791, 794 (Tex. 1991); Westech Eng'g, Inc. v. Clearwater
Constructors, Inc., 835 S.W.2d 190, 195 (Tex. App.--Austin 1992, no
writ). In a bench trial, the trial judge passes on the witnesses'
credibility and the weight given their testimony, and can reject or accept
any witness's testimony in whole or in part. Bocquet v. Herring, 972
S.W.2d 19, 22 (Tex. 1998); In re Cummings, 13 S.W.3d 472, 476 (Tex.
App.--Corpus Christi 2000, no pet.). When confronted with conflicting
testimony, we defer to the determination of the trial court, who is the
sole judge of the credibility of the witnesses. Maeberry v. Gayle, 955
S.W.2d 875, 880 (Tex. App.--Corpus Christi 1997, no writ). While an
appellate court may not have reached the same findings, it may not
substitute its judgment for the trial court's judgment. Humphrey v.
Camelot Retirement Community, 893 S.W.2d 55, 58 (Tex. App.--Corpus
Christi 1994, no writ). 

 Findings of fact are reviewed for factual and legal sufficiency under
the same standards applied in reviewing evidence supporting a jury's
finding. Anderson, 806 S.W.2d at 794; Stable Energy, L.P. v. Newberry,
999 S.W.2d 538, 546 (Tex. App.--Austin 1999, pet. denied); Asai v.
Vanco Insulation Abatement, Inc., 932 S.W.2d 118, 121 (Tex. App.--El
Paso 1996, no writ). Conclusions of law are reviewed de novo as a
question of law and will be upheld if the judgment can be sustained on
any legal theory supported by the evidence. Circle C Child Dev. Ctr.,
Inc. v. Travis Cent. Appraisal Dist., 981 S.W.2d 483, 485 (Tex.
App.--Austin 1998, no pet.); Asai, 932 S.W.2d at 121; Westech Eng'g,
835 S.W.2d at 196. A trial court's conclusions of law may not be
challenged for factual sufficiency. Circle C, 981 S.W.2d at 485. 
Conclusions of law will not be reversed unless they are erroneous as a
matter of law. Stable Energy, 999 S.W.2d at 547. Incorrect conclusions
of law do not require reversal if the controlling findings of fact support
a correct legal theory. Id. 

 When a party with the burden of proof complains on appeal from
an adverse finding, the appropriate issues are "that the matter was
established as a matter of law" or that the "finding was against the
great weight and preponderance of the evidence." Croucher v.
Croucher, 660 S.W.2d 55, 58 (Tex. 1983). When we review a legal
sufficiency or "that the matter was established as a matter of law" issue,
we examine the record for evidence supporting the finding of fact and
ignore all evidence to the contrary. Sterner v. Marathon, 767 S.W.2d
686, 690 (Tex. 1989); Hickey v. Couchman, 797 S.W.2d 103, 109 (Tex.
App.--Corpus Christi 1990, writ denied). If we find that no evidence
supports the finding, we must determine from the record whether the
contrary proposition is established as a matter of law. Sterner, 767
S.W.2d at 690; Hickey, 797 S.W.2d at 109.

 When we review a factual sufficiency or that the "finding was
against the great weight and preponderance of the evidence" issue, we
examine the entire record. Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986); Hickey, 797 S.W.2d at 110. We set aside the verdict only if it
is so contrary to the overwhelming weight and preponderance of the
evidence as to be clearly wrong and manifestly unjust. Cain, 709
S.W.2d at 176; Hickey, 797 S.W.2d at 110.

 D. The Joint Check Agreement


 In its second issue, appellant asserts the joint check agreement
constituted a binding contract between Cenco and appellant that Cenco
would not charge more than $45,600 for the plumbing materials it had
agreed to supply for the Stell and Faulk project. Appellant contends the
joint check agreement is enforceable as a matter of law, and that the
evidence is legally and factually insufficient to support the trial court's
decision not "to enforce the terms of the joint check agreement." 

 The joint check agreement provides that the "overall value of all
materials and fixtures is $45,600" and that: 

[Cenco] is selling to [RC] materials to be
incorporated into the Stell and Faulk Kitchen
Additions located in Brownsville, Texas.


* * * * *



Nothing in this agreement shall be construed to
make [appellant] a party to any contract,
purchase order, or any other agreement between
[RC] and [Cenco], nor to infer responsibility for the
whole or partial performance thereof. By
agreeing to this joint check agreement, [Cenco]
agrees to provide all materials necessary for the
above referenced project.


 The contract for sale of the materials for $45,600 is clearly
intended to be binding on RC and Cenco. Ray, who drafted the
document, explicitly disclaimed participation by appellant in any
contract between RC and Cenco. A contract must be based on
mutuality of obligation. Federal Sign v. Texas S. Univ., 951 S.W.2d
401, 408 (Tex. 1997); Texas Gas Util. Co. v. Barrett, 460 S.W.2d 409,
412 (Tex. 1970). Here, the agreement explicitly says it is for the sale of
materials and that it is between RC and Cenco. It further expressly
disclaims appellant's liability on the contract between RC and Cenco. 
No mutuality exists between appellant and Cenco as to the terms of the
sale, and thus no contract exists between the two as to those terms. 
The only agreement between appellant and Cenco set forth in the joint
check agreement is that Cenco would provide all materials, and
appellant would include Cenco as a payee on the checks it issued to RC
in payment for the materials.

 Furthermore, Paul Pena, vice-president of Cenco, testified that
after RC filed for bankruptcy and walked off the job, Ray called to assure
him Cenco would be paid for materials already furnished, and to make
sure Cenco would deliver the rest of the materials needed to complete
the job. Pena told Ray he would need to complete a credit application. 
Cenco sent Ray the application, which provided for payment of 1.5
percent interest on past due balances. Appellant's account was
approved with a credit line of $17,000.

 Ray testified that Pena told him he needed to fill out the credit
application. He did so, and even made some modifications to the
language of the application. Another employee of appellant filled out a
Texas Sales Tax Resale Certificate in appellant's name, which was
provided to Cenco so that no sales tax would be charged on the
materials. Ray testified, however, that despite the fact the credit
application was filled out by him in appellant's name, and that he
regularly filled out such applications in the course of his business, he
did not know he was opening a Cenco credit account in appellant's
name.

 In a bench trial, the trial judge passes on the witnesses' credibility
and the weight given their testimony, and can reject or accept any
witness's testimony in whole or in part. Bocquet, 972 S.W.2d at 22
(Tex. 1998); In re Cummings, 13 S.W.3d at 476. When the record
contains conflicting testimony, the appellate court must defer to the
determination of the trial court, who is the sole judge of the credibility
of the witnesses. Maeberry, 955 S.W.2d at 880.

 Obviously, the trial judge chose to believe Pena's testimony that:
(1) the parties entered into a new contract directly with Cenco for the
purchase of the needed materials; (2) no price terms or limits were set;
(3) appellant agreed to pay in accordance with the terms of the credit
account application for the needed materials; and (4) Cenco agreed to
supply those materials.

 We hold the evidence is legally and factually sufficient to support
the trial court's findings. We overrule appellant's second issue.

E. Interest Paid by Appellant


 In its first issue, appellant complains the evidence is legally
insufficient to support the trial court's conclusion of law that the
interest charged by Cenco was not usurious.(3) Appellant contends the
charges by Cenco were usurious in two different respects.

1. Interest Charged by Cenco to the RC Plumbing Account


 The record shows that from August 25, 1995 through February
25, 1996, Cenco charged finance charges in the amount of $328.28 to
the RC account. Appellant contends these charges were usurious as to
it because the joint check agreement specified no interest rate to be paid
by appellant. Therefore, Cenco was limited by statute to a six percent
per annum interest charge. See Act of May 24, 1979, 66th Leg., R.S.,
ch. 707, § 1 (amended 1997) (current version at Tex. Fin. Code Ann. §
302.002 (Vernon 1998) (allowing six percent per annum interest to be
charged if no interest rate is specified)). In other words, appellant
argues that it should not have had to pay any interest charges above six
percent on the amounts it paid under the joint check agreement, and
that any interest charge exceeding that rate was usurious.

 The applicable usury statute provides that remedies available for
usurious interest are available to the obligor. See Act of May 9, 1979,
66th Leg., R.S., ch. 281, §1 (amended 1997) (current version at Tex. Fin.
Code Ann. § 305.001 (Vernon 1998)). Because this statute is penal in
nature, it must be strictly construed; therefore, only the immediate
parties to the transaction may assert usury claims. Houston Sash &
Door Co., Inc. v. Heaner, 577 S.W.2d 217, 222 (Tex. 1979); Peoples
State Bank of Clyde v. Andrews, 881 S.W.2d 520, 522 (Tex.
App.--Eastland 1994, no pet.); Micrea, Inc. v. Eureka Life Ins. Co. of
Am., 534 S.W.2d 348, 354 (Tex. Civ. App.--Fort Worth 1976, writ ref'd
n.r.e.). The right of action to recover statutory penalties for usury is
purely personal to the borrower. Patterson v. Neel, 610 S.W.2d 154,
156 (Tex. App.--Houston [1st Dist.] 1980, writ ref'd n.r.e.). This right
is not assignable. Allee v. Benser, 779 S.W.2d 61, 62 (Tex. 1988);
Smart v. Crawford Bldg. Material Co., 638 S.W.2d 228, 230 (Tex.
App.--Tyler 1982, no writ).

 We have already held that: (1) the contract for the sale of the
materials set forth in the joint check agreement was between RC and
Cenco and (2) appellant was expressly excluded from that contract and
was in no way an obligor on RC's credit account with Cenco. 
Therefore, appellant is not entitled to raise any issues of usury with
respect to finance charges on RC's account. Any dispute it had as to
payment of unauthorized finance charges on the materials bill should
have been raised with RC. We hold the evidence is legally sufficient to
support the trial court's conclusion that these charges were not
usurious.

2. Interest Charged by Cenco to Appellant's Account


 Appellant further contends that the payment of $5,071.41 under
the joint check agreement for pre-bankruptcy materials delivered to RC
constitutes a usurious charge to appellant's account. It asserts that
Cenco required the payment of the outstanding balance on RC's
account as a condition for extending credit to appellant, and therefore
the payment must be credited as interest. See Alamo Lumber Co. v.
Gold, 661 S.W.2d 926, 928 (Tex. 1983) (a lender who requires as a
condition to making a loan that a borrower pay another debt must
include the amount of the other debt in the interest computation). It is
undisputed that the interest charged by Cenco on appellant's account
would be usurious if the $5,071.41 payment is counted as interest. 
Assuming, arguendo, that the reasoning of Alamo Lumber applies here,(4)
the crux of this argument is whether or not Cenco required appellant to
pay the $5071.41 outstanding balance on RC's account as a condition
for extending credit to appellant.

 Pena testified that Ray called in February, 1996 to tell him of RC's
bankruptcy. Ray told Pena "not to worry -- whatever materials that we
had for that job would be paid for." Pena told Ray that he would have
to speak to his father, Pablo Pena Sr., the president of Cenco, regarding
how the remaining materials would be paid for. Pena, Sr., decided to
require appellant to open up its own account for the credit purchase of
the remaining materials. Pena told Ray, who "wasn't happy about"
having to open an account for appellant. It was "understood" that
appellant would pay for materials delivered prior to the bankruptcy, as
it was required to do under the joint check agreement. After the
bankruptcy, but before Ray completed the application for appellant's
account and before appellant paid for the pre-bankruptcy materials,
Cenco delivered some $10,000 worth of materials directly to appellant.

 Ray testified, however, that after the bankruptcy, Cenco refused
to deliver a large shipment of special-ordered material until the amount
due for the pre-bankruptcy materials ($5,071.41) was paid. Ray
testified that Pena never told him the joint checking agreement was no
longer in force, or that he was going to open a separate account in
appellant's name. He admitted that he completed and signed the Cenco
credit application, but said he regularly filled out such applications in
the course of his business.

 Given Pena's and Ray's testimony, and the fact that some $10,000
worth of materials was delivered to appellant several weeks before
appellant even applied for its own account, and before appellant paid
the $5,071.41 due for the prebankruptcy materials, there is evidence in
the record that Cenco did not require payment for those materials as a
condition of extending credit to appellant.

 We hold the evidence is legally sufficient to support the trial
court's conclusion that Cenco's charges were not usurious. Appellant's
first issue is overruled.

 The judgment of the trial court is affirmed.


 FEDERICO G. HINOJOSA

 Justice



Do not publish. Tex. R. App. P. 47.3.


Opinion delivered and filed this 

1st day of February, 2001.

1. Retired Justice Melchor Chavez, assigned to this Court by the Chief Justice of
the Texas Supreme Court pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).
2. See Tex. Prop. Code Ann. § 53.012 (Vernon Supp. 2001).
3. In this issue, appellant also asserts the evidence is factually insufficient. 
However, as we noted above, a trial court's conclusions of law may not be challenged
for factual sufficiency, and will not be reversed unless they are erroneous as a matter
of law. Circle C Child Dev. Ctr., Inc. v. Travis Cent. Appraisal Dist., 981 S.W.2d 483,
485 (Tex. App.--Austin 1998, no pet.); Stable Energy, L.P. v. Newberry, 999 S.W.2d
538, 547 (Tex. App.--Austin 1999, pet. denied).
4. In Alamo Lumber, a bank required a debtor to assume the debt of a third party
who was a stranger to the transaction as a condition for extending credit to avoid
foreclosure on the debtor's home. Alamo Lumber Co. v. Gold, 661 S.W.2d 926, 927
(Tex. 1983). In the instant case, the parties were both participants in and
beneficiaries of the project out of which the prior debt arose.